### TOM STANDFIELD V. THE STATE.

#### No. 4920. Decided January 22, 1919.

**1.—Theft of Cattle—Sufficiency of the Evidence—Accomplice—Corroboration—Charge of Court.**

Where, upon trial of theft of cattle, the evidence may have been sufficient to sustain the conviction, yet where the court's charge on accomplices' testimony requiring corroboration authorized a conviction, if the testimony of the accomplices was true, the same was a charge on the weight of the evidence and reversible error.

**2.—Same—Charge of Court—Accomplice—Rule Stated.**

Whether or not any witness is an accomplice is a question of fact and must ordinarily be left for the jury to find under a proper charge defining

who is an accomplice, and in the instant case there was no error in submitting such a charge. Following Zollicoffer v. State, 16 Texas Crim. App., 317, and other cases.

### 3.—Same—Accomplice—Corroboration—Rules Stated.

Not only must the jury believe the accomplice testimony to be true and that it is corroborated, but it and the other testimony must make out the case beyond a reasonable doubt, and the jury should be so instructed, and where the court's charge authorized a conviction on the testimony of ac- complices if the jury believed the testimony to be true, the same is reversible error.

### 4.—Same—Accomplice Testimony—Rule Stated—Charge of Court.

A charge on accomplice testimony ought to define what is an accomplice, give substantially the statutory inhibition against conviction on accomplice testimony without being corroborated, tell the jury in substance that this must be sufficient as to some material matter and tend to connect the accused with the commission of the offense, applying the law to the facts, and instruct the jury that they can not convict on the testimony of the accomplice unless they believe in connection with all the other testimony that the accused is guilty as charged beyond a reasonable doubt. Following Grant v. State, 60 Texas Crim. Rep., 358.

### 5.—Same—Charge of Court—Bills of Exception.

Where the bill of exception to the court's charge was substantially suf- ficient in pointing out the error the same will be reviewed on appeal.

Appeal from the District Court of Cottle. Tried below before the Hon. J. H. Milam.

Appeal from a conviction of theft of cattle; penalty, three years im- prisonment in the penitentiary.

The opinion states the case.

*J. M. Hawkins* and *Williams & Williams,* for appellant.—On question of charge of accomplice's testimony: Grant v. State, 60 Texas Crim. Rep., 358; King v. State, 57 id., 363; Snelling v. State, 57 id., 416; Campbell v. State, 57 id., 301; Crawford v. State, 34 S. W. Rep., 927.

*E. A. Berry,* Assistant Attorney General, and *Moses & Rowe,* for the State.—On question of charge on accomplice testimony: Bishop v. State, 65 Texas Crim. Rep., 484, 144 S. W. Rep., 278.

PRENDERGAST, JUDGE.—Appellant appealed from a conviction of cattle theft with a penalty of three years assessed against him.

He claims that three of the State's witnesses, Alex Shinault, Alvie Tucker and his wife, Etta Tucker, were accomplices and that their testimony showing the offense was not sufficiently corroborated to justify conviction.

The animal was alleged to have been taken from Johnnie Jones, the owner, on or about January 18, 1914. The indictment was preferred on April 4, 1917.

The testimony shows that said Jones had the care, control and man- agement of what is called the OX ranch in Cottle County. This ranch

was apparently quite a large one. It was on both sides of the Pease River. In February, 1914, there were about 2000 head of cattle on said ranch owned by said Jones, as stated. The owner's brand on said cattle was OX. Their mark was "7 under bit" in each ear. Appellant owned at that time a 160-acre place just across the road and along the side of said ranch. His 160 acres ran down very close to the Pease River. Jones swore that he never gave appellant or any other person permission to handle or kill a red yearling or coming two-year-old heifer and he did not give anybody permission to handle, dispose of or kill any OX cattle. Nor did he sell any heifers around in that country at that time. That they never sold anything only what went out of the country or to be shipped and slaughtered, and that he never gave appellant or anyone else permission to handle, kill or dispose of any OX cattle. On cross-examination he swore that he knew nothing about the facts of this alleged theft. Nor of appellant's connection with the alleged stolen animal. He swore: "I do know that our cattle get out on the river once in a while. The fence up there right across from appellant's wasn't extra good." That he did not miss any cattle, and with the large number they had they never could tell—that they couldn't miss one yearling.

On appellant's place there were two sets of small houses about 300 yards apart. Said Alvie Tucker and his wife Etta, his tenants, lived in one and the Shinaults in the other. It seems he was in and out of his place and part of the time boarded and stayed at the Tucker's— not any great length of time nor continuously, but occasionally from time to time. The Shinaults had moved on his place in January, 1914. He had fifteen or twenty head of cattle in February running in a stalk field on his place. On or about February 12, 1914, appellant was at Shinault's as well as some relatives of the Shinaults by the name of Hicks. At that time Mr. and Mrs. Shinault had some six minor children living with them. Among them was their son Alex Shinault, a boy about eighteen years old, and a daughter, Safronia. A few days after the alleged theft old man Shinault became sick and remained so until he died on February 24th. The Hickses, who were visiting Shinaults at that time, were related to the Shinaults, Mrs. Shinault's nephews. There were four of the Hickses there on the day the animal was butchered.

The proof shows that old man Shinault at that time owned a Jersey steer or bull yearling and that it was in the pasture on appellant's place that Shinault then had rented. That old man Shinault needed provisions and intended to slaughter his said yearling for beef at that time and so announced to the company, including his wife and daughter and said son and the Hickses and appellant. Appellant thereupon said to Mr. Shinault that he had a red heifer yearling which he would trade him for said steer yearling if Shinault would give him the hide of the heifer yearling to boot between them. Mr. Shinault told appellant that if his red heifer was fit for beef he would trade with him. Thereupon

appellant asked Alex Shinault to get on his, appellant's horse, go down in the stalk field and drive up all of his cattle. The boy Alex Shinault complied with this request, went down in the field and drove up into Mr. Shinault's lot what appellant said were his cattle, including the said red heifer. Then appellant pointed' out to Mr. Shinault his claimed red heifer as the one he proposed to trade for Mr. Shinault's Jersey steer or bull. Upon looking at it and asking Mr. Tucker, who was also present, if the red heifer was fit for beef and Mr. Tucker telling him he thought it was, they traded. Mr. Shinault then shot and killed said red heifer. He and his son Alex, Mr. Tucker and appellant skinned and dressed it for beef. Mr. Shinault at the time sold to Mr. Tucker half of the beef, for which Mr. Tucker paid him $8, the value of it. Mr. Tucker then took his part of the beef to his home, hung it up in his barn and he and his wife ate it until they ate all of it. Appellant at the time was staying at Mr. Tucker's.

So far as the Shinaults, Tuckers and Hickses were concerned, the testimony was sufficient to show, and we think did show, that they each and all were acting in the utmost good faith, and that neither of them believed or had any reason to believe that any of them were at the time in any way particeps criminis in the theft of said red heifer by appellant from said Jones.

We will give in substance briefly the testimony of several of the witnesses. Alex Shinault testified that his father at said time owned a Jersey year old past steer running in the pasture where they then lived and that he determined to kill it for beef. That appellant was present when he announced this and told his father that he had a red heifer yearling he would trade him for said steer, and that his yearling was larger than his father's, and proposed to trade his red heifer for said steer if Shinault would give him the hide of the red heifer to boot. That appellant called him and told him to get on his horse, go down in the field and drive up his cattle, which he did, there being some fifteen or twenty head of them. That appellant then pointed out to his father said red heifer yearling and that they then traded yearlings on the terms proposed by appellant. That they then turned out of the lot all of the other cattle and his father then shot and killed for beef the red heifer which appellant had just traded to him for said steer yearling. That his father, he, appellant and said Tucker then skinned and dressed the beef. That his father sold half of it to Tucker at the time for $8, which Tucker then and there paid him for. That appellant rolled the hide up, put it in a sack and carried it over to, and put it in, Tucker's barn. That at the time that appellant started to roll the hide up he noticed that the brand was OX and that the ear mark was "7 under bit" in each ear. That when appellant and his father traded as stated, he, his father, Alvie Tucker and four of the Hickses men, his uncles, were present and that his mother and his two grown sisters and the other little folks were also there. On cross-examination he testified that he thought the cattle he ran up at appellant's instance and drove into his

father's lot were appellant's. That at the time appellant and his father traded that he did not pay the yearling any mind, than that he saw it and looked at it. He did not look close enough at that time to see the brand.

Alvie Tucker testified among other things that he moved on appellant's place about January, 1913, and continued to live on it until about June, 1914. That he lived in one of the two houses on appellant's place and the Shinaults at the time said alleged animal was slaughtered lived in the other with his family. That on that occasion some of Shinault's kinsfolk were visiting him—the Hickses—and he was up at Shinault's at the time. That Mr. Shinault had a little Jersey steer yearling which he had determined to kill that evening for beef and that appellant told him he would trade him a heifer he had for that steer, he, appellant, keeping the hide to boot, and Mr. Shinault told him he would trade with him if his, appellant's, was fat enough for beef. That appellant then had Alex Shinault to get on his, appellant's, horse and go down in the stalk field and drive up the bunch of cattle, which Alex then did. When they got the cattle in the pen appellant pointed out the heifer yearling and he and Shinault then traded and Shinault shot and killed and slaughtered the heifer for beef. That he helped to slaughter it and that he bought half of it from Mr. Shinault at the time and paid him $8 for it. That when he bought it he carried it home and put in his barn. That at the time appellant put the hide of the animal in a sack and carried that over and put it in his barn. That he saw the brand on said hide, which was the OX brand and that he knew at the time that Jones had charge of the OX cattle. that the next evening late appellant carried this hide off down in the OX pasture and that he, the witness, was there when appellant returned and he asked him what he had done with the hide and appellant said he had carried it down and scattered it out in the pasture for the coyotes. That at the time old man Shinault butchered said heifer he, Alex Shinault, three of the Hicks boys, old man Shinault and his wife and two daughters were there. On cross-examination he testified that the animal killed on this occasion was a red heifer. That when Alex Shinault drove it in his father's lot as stated he did not notice any particulars, just noticed it was fat enough for beef. That Mr. Shinault asked him if it was and he replied to him that he thought it was. That he did not at that time examine it enough to see whether it had a brand on it.

Mrs. Etta Tucker, the wife of Alvie Tucker, testified that she remembered of the beef being killed at Mr. Shinault's. That her husband brought part of the beef home with him when he and appellant came to her home from where the beef had been slaughtered. That the next morning appellant brought into her kitchen a piece of the fresh hide with the OX brand on it, and also the ears of the animal and burned that piece of the hide and said ears. On cross-examination she testified that when her husband brought this beef to her house she did

not ask him where he got it because she knew they had killed a beef at Mr. Shinault's and that she could see them out there at the time. That where she lived was just a short distance from where they slaughtered the beef. That she did not tell anyone except her husband about appellant's burning said ears until some time in the spring of 1917. That she wasn't at Shinault's the day the yearling was killed, but that she was in her home standing in the door when she saw them and they were killing the yearling. From where she was she could not tell whether it was branded or not. On redirect examination she swore that on the evening of the morning on which appellant burned the ears and piece of hide on which the brand was, that appellant was at her house and went off and came back and that her husband asked him where he had been and he laughed and said he had scattered that hide out for the coyotes.

Appellant reintroduced Alvie Tucker, who testified that his wife told him at the time about appellant's burning said piece of the hide and that she did the cooking, cooked the meat and ate part of it. That they continued to eat that meat until it was all eaten up. He also reintroduced Mrs. Tucker, who on this point testified substantially to the same thing.

The State introduced Mrs. Safronia Calloway, daughter of Mr. and Mrs. Shinault; Mrs. Mattie Shinault, widow of Mr. Shinault, who died about ten days after said animal was slaughtered, and Rankin Hicks, each of whom corroborated said witnesses Alex Shinault and Mr. and Mrs. Tucker.

Mrs. Calloway testified that on the evening said animal was killed and slaughtered for beef by her father that she was present with several others when appellant and her father traded yearlings as shown above. That for some reason appellant wanted the steer yearling owned by her father which he proposed to kill for beef. That the yearling her father owned and intended to kill was a Jersey bull yearling and that appellant traded the said heifer for her father's steer yearling, appellant reserving the hide of the slaughtered animal to boot. That at the time this trade was proposed between them she and others were out at the windmill where the trade was proposed. That she couldn't say who drove them up and put them in the pen. That she did not actually see the animal killed at the time but that she was in the house and heard the shot fired and saw part of the meat that was brought to the house. That she did not know for sure whom the animal belonged to at the time it was killed. On cross-examination she stated that when she was out at the windmill, where the trade was proposed by appellant, that her father, brothers, appellant, Mr. Tucker and four of the Hicks men were present. She swore: "I do know that the yearling was killed there and some of the meat was brought into the house. It was a red yearling. I saw it. I saw it when they drove it up. I never saw the brand on it. I just saw it at a distance. I think it was the only yearling that they drove up. I was there where I could see it."

Mrs. Mattie Shinault, the widow of the old man, who died shortly after the slaughter of said animal, swore that she remembered a heifer yearling being killed at her husband's about the time alleged. That her husband had a steer yearling which he started to kill for beef. That appellant traded them the heifer yearling for that steer and they butchered the heifer that appellant then traded to her husband. That the trade made between appellant and her husband at the time was that appellant was to take the hide to boot between the two yearlings. That when they first commenced talking about that yearling that it was down in the field with other cattle. That Alex drove up the cattle and this yearling they killed. That she did not actually see the yearling killed, for she was in the house, but she heard the shot fired. That there were other cattle driven up with this heifer at the time. That she saw appellant and Alvie Tucker leave there after the animal was slaughtered and that Tucker took part of the beef away with him. That she saw Tucker took part of the beef away with him. That she saw Tucker pay her husband for some of the beef but she did not know how much he paid. She said: "I know Tom Standfield (appellant) put that hide in a sack and taken it down to Alvie Tucker's. I do not know what brand was on that animal that was killed there that day. I did not know who that animal belonged to. I did not have any knowledge that the animal killed that day was a stolen animal." On cross-examination she swore that the yearling her husband killed on that occasion was a red yearling.

Rankin Hicks testified that he was present at the old man Shinault's at the time appellant traded him said red heifer yearling for Shinault's Jersey steer yearling or bull. That his uncle, old man Shinault, had a Jersey steer out there in the pasture and said he was going to kill it. Appellant said he had a red heifer and would trade for it and take the hide to boot, and that his uncle, old man Shinault, took him up. That Alex Shinault drove up the cattle, including said red heifer yearling, and that after the trade was consummated between appellant and his uncle that his uncle killed it by shooting it. That his uncle kept part of that meat and Alvie Tucker took the other part. That Tucker bought the part he had from his uncle. That appellant rolled the hide up, put it in a sack and carried it over to Alvie Tucker's barn. That he noticed that the mark on the animal slaughtered was a "✓ under bit" in each ear. That he did not notice the brand. That this animal was butchered about the 11th or 12th of February.

Appellant himself testified and stated that at the time of the trial he lived near Waco, Texas; that at the time he is alleged to have traded a yearling to Mr. Shinault he did not then remember just where he did board, but that part of the time he boarded at the jail with Mr. Baccus. He denied boarding with Tucker at that time, but said in passing back and forth that when he came through near night he would stay there all night sometimes with them. He denied that at the time in February when the other witnesses swore, he traded with Mr. Shinault a

red heifer for a Jersey steer. That he did not help Tucker at that time or at any other time, or old man Shinault skin a yearling. That he never took a hide from Shinault's to Tucker's barn and never kindled a fire and burned a hide with an OX brand on it at Mrs. Tucker's. And he denied the conversation with Tucker and his wife about scattering the hide of that animal out for the coyotes, and denied that he was at Tucker's or Shinault's on or about the 10th or 12th of February, 1914, and said: "I knew nothing about a calf or heifer calf being killed at that time."

The evidence as a whole was clearly sufficient for the jury and lower court to believe as they did that appellant stole from said Jones said red heifer, and the testimony of the witnesses Alex Shinault, Alvie Tucker and Mrs. Etta Tucker even if they or either of them were accomplices, was amply and fully corroborated by the other witnesses as shown above. So that if it could be held that said three witnesses claimed by appellant to be accomplices were accomplices then their testimony was amply corroborated and altogether showed appellant's guilt.

Appellant's other contention is that the court committed a reversal error in not charging as a matter of law that Alex Shinault, Alvie Tucker and Etta Tucker were accomplices. The court on this point charged the jury as follows: "A conviction can not be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. And the corroboration is not sufficient if it merely shows the commission of the offense, and one accomplice can not corroborate another accomplice. An accomplice, as the word is here used, means anyone connected with the offense committed, either as principal offender, as an accomplice, as an accessory or otherwise. It includes all persons who are connected with the crime by unlawful acts or omission on their part transpiring either about, at the time or after the commission of the offense, and whether or not he or she was present and participated in the commission of the crime or not. Now if you should be satisfied from the evidence that the witnesses Alex Shinault, Alvie Tucker or Mrs. Etta Tucker, or either one of them, was an accomplice, or if you have a reasonable doubt as to whether they or either one of them or not, as that term is defined in the foregoing instruction, then you are further instructed that you can not find the defendant guilty upon their testimony unless you are satisfied beyond a reasonable doubt that the testimony of said witness or witnesses is true, and you are further satisfied by other evidence, beyond a reasonable doubt, that the said testimony of said witness or witnesses have been corroborated by other evidence tending to establish beyond a reasonable doubt, that the defendant did commit the offense as charged." Therefrom it is seen that the court's charge copied literally the statute (art. 801, C. C. P.) applicable to the testimony of an accomplice. And in addition defined who an accomplice was in its broadest and most comprehensive sense in accordance with the uniform

and many decisions of this court, and is strictly in accordance with sec. 702, 1 Branch's Ann. P. C., and cases there cited.

Whether or not any witness is an accomplice particeps criminis as to the crime charged is a question of fact and must ordinarily be left for the jury to find under a proper charge defining who is an accomplice. This may not apply to the crime of seduction, for the statute (art. 789, C. C. P.) in effect makes the seduced female as a matter of law an accomplice and requires that her testimony shall be corroborated.

Bearing on the question of whether or not said Alex Shinault and Alvie Tucker were accomplices, it is proper to state that they each had been indicted at a different time and before appellant was indicted for the theft of said red heifer and Tucker had agreed with the State in effect to testify as a witness for the State in this case on the State's agreeing to dismiss the case against him. And on the further agreement by Alex Shinault to plead guilty and get a suspended sentence.

In the opinion of this writer it is doubtful if the evidence as a whole was sufficient to show that either of said three witnesses was an accomplice.

But at any rate, the evidence as a whole would not have justified the court in taking the question of whether or not either of the said witnesses were accomplices, away from the jury and charged as a matter of law that they or either of them were accomplices. The question was properly submitted by the trial judge to the jury to determine this question.

In Zollicoffer v. State, 16 Texas Crim. App., 317, one Green, as the court stated, "was unquestionably an accomplice." He had been indicted for the same offense and turned State's evidence in order to avoid being prosecuted himself. The court therein submitted the question to the jury for it to decide whether he was an accomplice and if he was he had to be corroborated. The appellant therein contended that the court submitting the question to a jury was error and that the court should have told the jury in his charge that such witness was an accomplice. This court holding: "Whilst it would not, under some facts, be improper for the court in its charge to assume, and to instruct the jury, that a witness is an accomplice (Williams v. State, 42 Texas, 392; Barrara v. State, 42 Texas, 260) still we do not think it is error to submit the question to the jury. It has been the practice in such cases to submit this issue to the jury, and, believing the practice to be safe and proper one, and in harmony with the spirit of our system of procedure we are not disposed to change it."

In Ransom v. State, 49 S. W. Rep., 582, this court, through Judge Brooks stated that the appellant therein complained that the court erred in submitting to the jury the issue as to whether or not a certain witness was an accomplice, and said: "The court committed no error in this regard. While it would not, under certain states of fact, be improper for the court in his charge to assume and instruct the jury that

a witness is an accomplice, still we do not think it is error to submit the question to the jury. In such cases it has been the practice to submit this issue to the jury, and, believing the practice to be a safe and proper one, and in harmony with the spirit of our system of procedure, we are not disposed to change it. Zollicoffer v. State, 16 Texas Crim. App., 317."

In Hankins v. State, 47 S. W. Rep., 992, on this question Judge Henderson, speaking for the court said: "The question as to whether or not a witness is an accomplice is always a question of fact, and it is always proper for the court to leave this matter to the jury, even though the evidence should be overwhelming to the effect that a witness or witnesses are accomplices."

In Carroll v. State, 62 S. W. Rep., 1061, on this point Presiding Judge Davidson, speaking for the court, held: "It is true the court might have charged the jury that the witness was an accomplice, as it is an unquestioned fact, but it is not reversible error for the court not to do so. The court submitted it as an issue of fact."

In Dill v. State, 28 S. W. Rep., 950, this court, through Judge Davidson, again said: "Whether or not a witness is an accomplice is a question of fact, and the charge may be so framed as to submit this as an issue to the jury. It was not necessary in this case to instruct the jury that Anderton was an accomplice, and in submitting this as an issue to be passed upon by the jury the court did not err, although he is clearly shown to be an accomplice. No jury of ordinary intelligence could have failed to find that he was an accomplice. Elizando v. State, 31 Texas Crim. Rep., 237."

Again in Vail's case, 59 Texas Crim. Rep., 342, this court, through Judge McCord on this point, after discussing and citing some cases where it had been held that it was proper to instruct that certain witnesses under certain circumstances were accomplices without submitting that question to the jury, held: "We do not believe that a well considered case can be found where this court has reversed the case because of the failure of the court to instruct the jury that certain witnesses are accomplices. In the Zollicoffer case, 16 Texas Crim. App., 312, this court, speaking through Judge Wilson says: 'It is insisted by appellant that the court erred in submitting to the jury the question as to whether or not the witness Green was an accomplice; that the court should have directly charged the jury that he was an accomplice, the evidence being so conclusive of that fact. Whilst it would not, under some facts, be improper for the court in its charge to assume and to instruct the jury that a witness is an accomplice, still we do not think it is error to submit the question to the jury. It has been the practice in such cases to submit this issue to the jury, and, believing the practice to be a safe and proper one, and in harmony with the spirit of our system, we are not disposed to change it.' The doctrine laid down in the Zollicoffer case was approved in the case of Elizando v. State, 31 Texas Crim. Rep., 237. In the case of White v. State, reported in

30 Texas Crim. App., 652, this court, speaking through Judge White, says: "The charge is objected to because it did not instruct the jury in so many words that the witness Powell was an accomplice. The charge submitted this question to the jury . . . the court did not err in submitting this question to the jury for their determination." This rule seems to have been followed by this court in the case of Hilton v. State, 41 Texas Crim. Rep., 190; Moore v. State, 47 Texas Crim. Rep., 410; Davis v. State, 55 Texas Crim. Rep., 495. We therefore hold that it is not reversible error to submit the question as to whether the witness is an accomplice to the jury to be found by them as a fact."

On this point also see Creech v. State, 70 Texas Crim. Rep., 238, and cases there cited, and 1 Branch's Ann. P. C., sec. 712.

There might be some cases in which the court should be required to charge that a certain witness is an accomplice as a matter of law, yet this is not that kind of a case. The court correctly submitted the question to the jury for them to determine whether or not the said witnesses or either of them were accomplices and then substantially told the jury in accordance with the law that their testimony had to be corroborated before a conviction could be predicated upon their testimony. No error was committed by the court in refusing to charge that the said witnesses were as a matter of law accomplices.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### January 22, 1919.

LATTIMORE, JUDGE.—This case is before us on appellant's motion for rehearing.

Complaint is made that in the former opinion of this court a most serious contention of appellant was not discussed or passed upon, towit: that the court's charge on accomplice testimony was erroneous in assuming that the accused was guilty if the accomplice testimony was true.

An inspection of the former opinion convinces us of the justice of the complaint. The charge objected to is as follows:

"Now if you should be satisfied from the evidence that the witnesses Alex Shinault, Alvie Tucker or Mrs. Etta Tucker or either one of them was an accomplice or if you have a reasonable doubt as to whether they or either one of them or not, as that term is defined in the foregoing instruction, then you are further instructed that you can not find the defendant guilty upon their testimony unless you are satisfied beyond a reasonable doubt, that the testimony of said witness or witnesses is true, and you are further satisfied by other evidence, beyond a reasonable doubt, that the said testimony of said witness or witnesses have been corroborated by other evidence tending to establish beyond a reasonable doubt, that defendant did commit the offense as charged."

It will be seen that this charge authorized a conviction of appellant if the jury believed the testimony of these three named witnesses to be

true, and that there is other evidence tending to establish that appellant committed the offense.

This is not the law. Not only must the jury believe the accomplice testimony to be true, and that it is corroborated, but it and the other testimony must make out the case beyond a reasonable doubt, and the jury should be so told directly and pertinently. Stripped of verbiage and stated positively instead of in the negative, this charge instructs the jury that if they believe the accomplice testimony is true, and that there is other evidence corroborating it which tends to establish appellant's guilt, they could convict. This might be true, in fact, in some cases and not true in others, and it is not the correct announcement of a legal principle. It is a direct charge on the weight of the evidence, and assumes that if the testimony of these witnesses be found true, it would justify a conviction, provided there be corroborating evidence. As stated, it might and it might not justify such conviction, this being for the jury and not for the court. A charge almost exactly similar to this was condemned in Grant v. State, 60 Texas Crim. Rep., 358, 132 S. W. Rep., 350.

A charge on accomplice testimony to be sufficient ought to, first: define what is an accomplice; second, give substantially the statutory inhibition against conviction on accomplice testimony without being corroborated; third, tell the jury in substance that the corroborating evidence to be sufficient must be as to some material matter, and must tend to connect the accused with the commission of the offense; and, fourth, must apply the law to the facts, and tell the jury that they can not convict on the testimony of ——, who is an accomplice (if they find him to be an accomplice), unless they believe from the testimony of said accomplice, taken with all the other testimony in the case, beyond a reasonable doubt, that the accused is guilty as charged, and unless they further find and believe there is other evidence than that of the accomplice as to some material matter which corroborates said accomplice, and tends to connect the accused with the commission of the offense.

There are many approved charges on this subject in the books which we commend to the trial judges.

It was contended by the State on this rehearing that the exception to this paragraph of the court's charge is not specific enough, and that it did not point out the error complained of. Let us see. Appellant excepted to paragraph 7 of the court's charge, which is the one under consideration, as follows: "For the reason that said paragraph assumes that the testimony of Alex Shinault, Alvie Tucker and Mrs. Tucker, or some of them, make out a case of theft against the defendant." The court in said paragraph had told the jury they could not convict on the testimony of these same people, "unless you are satisfied beyond a reasonable doubt that such testimony is true." Appellant might have used different words in his exception, and might have said he excepted to paragraph 7 of the court's charge because the same stated, substantially,

that if the jury believed the testimony of Alvie Tucker, Mrs. Tucker and Alex Shinault was true they should convict; but we fail to see any appreciable difference between his statement that said charge assumed that their testimony made out a case, and the instruction if their testimony was true appellant might be convicted thereon. We think the two statements substantially the same, and the exception is sufficient.

The motion for rehearing is granted, and the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*