.W. W. WILLMAN v. THE STATE.

Decided June 7, 1922.

1.—Murder—Evidence—Hearsay—Rule Stated.

Where, upon trial of murder, the State's witness testified that he took the officers to the place where the killing occurred, the officers then should have testified what, if anything, they found at that point; but to permit the state's witness to testify what he told the officers about the occurrences at the time of the killing, and then permit the officers to testify that he did tell them certain things in connection with pointing out certain objects, was clearly obnoxious as falling within the rule of hearsay testimony.

2.—Same—Charge of Court—Accomplice Testimony—Corroboration—Duress.

Where, upon trial of murder, the principal state's witness was clearly an accomplice, by his own testimony, the court should have so charged the

jury, and where the effect of the court's charge was that if said State's witness was an accomplice, no conviction could be had upon his testimony without corroboration, but that he might, by his unsupported statement of duress remove the onus of an accomplice and a conviction could then be had upon his testimony alone, the same was reversible error.

### 3.—Same—Accomplice—Corroboration—Duress—Rule Stated.

If one, by his own conduct and statement, has placed himself, in the position where the taint of accomplice has once attached, and he seeks to excuse it on the ground that he had been forced by threats to do or say the things which caused the taint, there should be corroboration of his testimony as to the existence of such duress, before he could be relieved of the burden placed upon him by the law.

### 4.—Same—Requested Charge—Specific Intent to Kill.

Where the evidence showed that the blows which were alleged to have killed deceased were not struck by defendant but by his companion, and that appellant was present at the time and had hold of deceased by one of his arms, the jury should have been instructed that if they believed from the evidence beyond a reasonable doubt that unless he knew before of the specific intent to kill defendant would not be guilty.

Appeal from the District Court of Commanche. Tried below before the Honorable J. R. McClellan.

Appeal from a conviction of murder; penalty, life imprisonment. The opinion states the case.

*Callaway & Callaway* and *Wilkinson & McGaugh*, for appellant.— On question of confession: Condee v. State, 35 Texas Crim. Rep., 98; O'Quinn v. State, 55 id., 18; Carroll v. State, 83 id., 369; and cases cited in opinion.

*R. G. Storey*, Assistant Attorney General, and *Joe H. Eidson*, District Attorney, for the State.—Cited: Kennon v. State, 82 S. W. Rep., 518; Funk v. State, 208 id., 513.

HAWKINS, JUDGE.—Appellant was indicted jointly with Ed Walker and Gibbs Howard for the murder of Jack McCurdy. Severance was granted and appellant first placed upon trial, which resulted in conviction with a punishment of life imprisonment in the penitentiary.

Many of the facts are stated in the opinion in the Howard case, (delivered May 31, 1922). Deceased's mangled body was found on the railroad early one Friday morning. That he left the town of Hasse late Thursday afternoon with Earl Henry and accompanied the latter home is an established fact. Mrs. Henry and her sister were at the house when deceased and Henry arrived. The two women left in a short time to spend the night with their father, leaving deceased and Henry there alone. The first story told by Henry was at the

inquest, where he asserted that McCurdy, duly sober, left his house alone the night before. He reiterated this statement several times. He afterwards claimed that Willman, Howard and Walker directed him to so state. When taken before the grand jury he changed his statement to the effect that he and McCurdy went to appellant's house that night; that both he and McCurdy were drinking; that he (witness) went home leaving McCurdy at appellant's; that no one was there when witness left save appellant, the latter's wife and Mrs. Howard. Appellant, his wife and Mrs. Howard all testify to the same facts. They state that after Henry went home deceased said he was going to Hasse and left going toward the railroad; that he was very much intoxicated at the time; that they saw him no more until his body was found on the railroad track near there the next morning. Henry was arrested and placed in jail. Later he was again taken before the grand jury and then for the first time told the story as related by him upon the trial. He now says that while he and deceased were at appellant's house Howard and Walker rode up, and Walker immediately asked deceased if he had given anything away before the grand jury, to which deceased replied that it was none of his damn business; that Walker took hold of one of deceased's arms and nodded to appellant who took him by the other arm; that they led him away a few steps when Walker picked up a stick, struck him on the head, knocked him down, and hit him two more blows; that he (Henry) undertook to run away and was fired at by Howard with a pistol and forced to return; that he then under threats and fear was forced to aid appellant, Howard and Walker in carrying the body and placing it on the railroad in order that it might appear he had been run over and killed by a train. Henry claims that all of his acts at the time and subsequent thereto were done under duress and by reason of threats made against him by the three parties named.

Henry testified, over objection, that the next morning he hid deceased's spurs and a copper coil which had been used at witness' house in making whisky; that some twenty days after the killing he went with the sheriff of the county and two of his deputies to appellant's house and there showed and told them where he (witness) claimed to have stood, and where he claimed to have run away, and where he claimed that Jack McCurdy was standing when Walker hit him with the club and killed him; that he carried the officers up to his (witness') house and showed them where he had buried the spurs and coil. The sheriff and his deputies were permitted to testify in detail over appellant's objection, that about twenty days after the killing, and after appellant had been arrested and placed in jail that Henry went with them to the home of appellant and showed and told them where Henry claimed that he and appellant and Gibbs Howard stood, and where Walker and McCurdy stood when he claimed McCurdy was knocked down and killed; each of said officers testified

that Henry pointed out to them where he had run before he was shot at, and the place where he stopped and turned back when Howard shot at him, and where he claimed that appellant and Walker rode their horses carrying the body of deceased to the railroad track; and that Henry pointed out to them a certain tree to which he told them the horses were tied; that he pointed out to them where he (Henry) had hid certain spurs belonging to deceased and a copper coil. The same objection was urged to this testimony upon the trial of appellant as upon Howard's trial and is also discussed in the Howard case, supra. The exact question before this court was considered in Marta v. State, 81 Texas Crim. Rep., 135, 193 S. W. Rep., 323, and in Huey v. State, 81 Texas Crim. Rep., 554, and the evidence held inadmissible. It is permissible for a witness to state that he pointed out to the officers or any other person a certain place, and then for the officers or other party to testify what they discovered at the place so pointed out to them. Frequently this is the only method by which testimony may be connected up and we observe no objection thereto, but the limitations upon such testimony are stated in the cases just cited. In the Marta case we find this language:

"It was not hearsay to permit the witness Laerma to testify that he pointed out to Sheriff Matthews and others the place where he said he saw appellants on the night of the homicide, and where he said appellants got in deceased's wagon. This was a witness testifying to facts within his knowledge and not to facts obtained from any other person. And it was not hearsay to permit Sheriff Matthews and others to testify that at this place was the point where they on the morning after the homicide noticed the wagon began to drag as if the brake had been thrown on. The Sheriff was testifying to facts observed by him on the ground."

We take the following quotation from the opinion on motion for rehearing in the Huey case:

"Williams took Taylor and others to the scene of the homicide and pointed out places which he said the parties occupied, and their movements at the time and place of the homicide. That Williams could testify to this, or that he could take parties to the point of the homicide and show, in a general way, the physical facts, or point them out, may be conceded, but when the State undertakes to show the statements and conversations of Williams and Taylor as to Williams' view of the matter and occurrences, we are of opinion the State went farther than was authorized."

The facts in the latter case upon the issue now under discussion were very similar to the ones in the instant case and we regard the opinion there as decisive of the matter presented here. We do not discuss the further objection that it was an act of a co-conspirator after the termination of the conspiracy. That has been fully reviewed in the Howard case. We are unaware of any authority going to the

length of holding admissible evidence which was permitted to go before the jury in the instant case. Henry was properly permitted to testify to the things he claimed to have occurred upon the night of the killing. He could also properly have testified that he took the officers to the place where the killing occurred, and the officers then could have testified what, if anything, they found at that point; but to permit Henry to testify what he told the officers about the occurrences at the time of the killing, and then permit the officers to testify that he did tell them certain things in connection with pointing out certain objects is to our minds clearly obnoxious as falling within the rule of hearsay testimony.

The court gave the following charge:

"As to the witness, Earl Henry, and his testimony you are charged that an offense committed under duress is not punishable by law. An offense committed under duress is where a person forced by threats or actual violence is not liable to punishment for the same. Such threats, however must be

(a)  Loss of life of personal injury.
(b)  They must be such as are calculated to intimidate a person of ordinary firmness.
(c)  The act must be done when the person threatening is actually present.

"The violence intended by this article must be such actual force as restrains the person from escaping, or such ill treatment as is calculated to render him incapable of resistance.

10.

. "Now bearing in mind the instructions given you in the last preceding paragraph hereof as to the term "Duress" you are instructed that if you find and believe from the evidence beyond a reasonable doubt that the acts, if any, of the witness Earl Henry, with reference to the killing of the said Jack McCurdy if you find the said Jack McCurdy was unlawfully killed by the defendant, acting alone, or in connection with Ed Walker, Gib Howard and the said Earl Henry, as principal offenders, as that term has hereinbefore been defined to you, and you further believe and find from the evidence beyond a reasonable doubt that the said Earl Henry was forced and compelled to do and perform the acts so done and performed by him, if any, in connection with said killing, if any, by the said Gib Howard, Ed Walker and W. W. Wilman, or either of them, then in the event you so find the said *Eral* Henry would not be guilty of any offense, and therefore in law would not be an accomplice, and the law with reference to an accomplice's testimony would not be applicable to the testimony of Earl Henry. On the other hand, if you believe and find from the evidence that the said Earl Henry did not act under duress as that term has been defined to you, but that he voluntarily, willingly, and of his own volition acted, then you are charged that the said witness Earl Henry

is an accomplice and you are instructed that you cannot, in the event you so find with reference to the witness Earl Henry, convict the defendant W. W. Wilman, upon the testimony of said witness Earl Henry alone, unless you first believe his testimony is true, and that it shows the defendant is guilty of the offense charged in the indictment, and even then you cannot convict the defendant upon said testimony unless you further believe there is other testimony tending to connect the defendant with the offense of murder as charged in the indictment, and such corroboration is not sufficient if it merely shows the commission of said offense.''

The foregoing charge is practically the same as given in the Howard case, and the same objections were urged here as upon that trial. Our views are fully expressed in the opinion in the Howard case. We only add the observation that the learned trial judge was confronted with a rather difficult problem in submitting the issue on account of the peculiar attitude of the witness Henry who had changed his statements a number of times. We are inclined to the view that the court should have charged the jury directly that Henry was an accomplice. His own testimony had placed him in such an attitude. He admitted from the witness stand that he had testified falsely in an effort to shield the parties he claimed to be guilty of the killing, although he undertook to shift criminal responsibility from his own shoulders by claiming that all of his acts both at the time of the homicide and subsequent thereto were through fear resulting from threats of the parties whom he implicated. The effect of the charge as given was to tell the jury if Henry was an accomplice no conviction could be had upon his testimony without corroboration, but that he might by his unsupported assertion of duress remove the onus of an accomplice and a conviction could then be had upon his testimony alone. To use a homely expression, this would be permitting the witness to lift himself from the mire by his own ''boot straps.'' The doctrine is too dangerous to give it our sanction. The law of our state always permits the testimony of an accomplice to go to the jury, but the Statute itself so safeguards the rights of one accused of crime that it declares he shall not be convicted upon the unsupported testimony of such a witness. If one by his own conduct and statements has placed himself in the position where the taint of accomplice has once attached, and he seeks to excuse it on the ground that he had been forced by threats to do or say the things which caused the taint, by the same process of reasoning whereby the law requires accomplice testimony to be corroborated before a conviction may be had upon it, it would seem to follow that there should also be corroborating testimony as to the existence of the duress before he could be relieved of the burden placed upon him by the law. Any other rule would be out of harmony with our Statutes on the subject of accomplice testimony and contrary to the application thereof so long recognized as correct by this court.

Many questions are raised in the record, but they are not likely to occur in the same form upon another trial and therefore we pretermit a discussion of them. We think it well, however, to call attention to a special charge which was requested by appellant and refused by the court. The evidence shows that the blows which were alleged to have killed deceased were struck by Ed Walker; that appellant was present at the time and had hold of deceased by one of his arms. Appellant requested the court to charge the jury in substance that appellant could not be convicted of the offense of murder unless they should believe from the evidence beyond a reasonable doubt that appellant knew before and at the time the said licks were struck by the said Walker that he was going to strike deceased with the specific intent to kill him. In view of another trial we would suggest the pertinency of the requested charge, and that in some form it should be submitted to the jury.

For the errors discussed the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*