## ED WALKER AND GIBS HOWARD V. THE STATE.

No. 9582.    Delivered Nov. 4, 1925.

Rehearing denied April 21, 1926.

**1.—Murder—Bill of Exception—Qualification of Court—Controls.**

Where a bill of exception complains of the admission of certain testimony, and the court qualifies such bill with the statement that no such testimony was in fact given in evidence on the trial, this court accepts the court's qualification as correct, and such bill presents no error.

**2.—Same—Continued.**

Where appellant complains in his bill of exception as to certain testimony of several witnesses as to the making of whiskey at the place and on the night that the homicide occurred, and the court qualifies such bill with the statement that all of the testimony with reference to the making of whiskey was brought out by counsel for appellant on direct examination of said witnesses, and that such testimony was limited in the charge as affecting the credibility of said witness, no error is shown. See Art. 811, Vernon's C. C. P., and authorities there collated.

**3.—Same—Requested Charge—Properly Refused.**

Where appellant requested the court to charge the jury as a matter

of law that malice aforethought was not in the case, and the facts as disclosed by the evidence would not warrant the submission of such a charge, no error is disclosed in its refusal.

**4.—Same—Requested Charge—On Deadly Weapon—Properly Refused.**

Where, on a trial for murder, the appellant requested the court to charge the jury that if Ed Walker, one of the co-defendants, struck and killed the deceased, such evidence would not warrant the conclusion that he struck him with the intent to kill. Such is not the law. The jury had the right to consider all of the facts and circumstances, including the striking of the lick itself, in determining the intent of Walker, at the time he acted, and the refusal of the requested charge was not error. Nor would the failure to give such charge have warranted the reversal of the case, if error, because it was not calculated to injure the rights of the appellants. See Art. 743, Vernon's C. C. P.

**5.—Same—Charge of Court—On Manslaughter—Properly Refused.**

Where, on a trial for murder, appellants requested the court to charge on manslaughter, and the evidence disclosed that appellant and his co-principals called the deceased out and deliberately beat him to death, wrapped his body in a quilt, carried and laid him on a railroad track, and threatened the co-principal Henry with death, if he disclosed the crime, and the only defense interposed was an alibi, no issue of manslaughter was raised, and the requested charge submitting such issue was properly refused.

**6.—Same—Requested Charges—Covered by Main Charge—Properly Refused.**

Numerous special charges were requested by appellant, all of which that correctly presented the law, were fully covered by the main charge, and for that reason were properly refused.

ON REHEARING.

**7.—Same—Charge of Court—On Manslaughter—Properly Refused.**

On rehearing, appellant insists that we were in error in our original opinion in holding that the evidence in this case does not warrant the submission of the issue of manslaughter. We are unable to agree with that contention. A most careful analysis of the testimony presented by the record before us, together with the records on the former appeals, fails to disclose to our minds anything except a deliberate and premeditated murder.

**8.—Same—Charge of Court—On Accomplice Testimony—Incorrect,—But Not Reversible Error.**

The form of the court's charge in the case before us in his submission of the law on accomplice testimony, has been many times condemned by us, although it is not always held a reversible error. To charge the jury that they may convict, if they believe the testimony of the accomplice *to be true* and believe that it *connects the defendant with the commission of the offense charged,* and that *even then no conviction could be had upon the testimony of the accomplice in the absence of other testimony tending to connect the accused with the offense charged,* is an incorrect presentation of the law.

**9.—Same—Continued.**

The vice in the charge lies in the fact that it warrants a conviction on the testimony of the accomplice, without regard to its cogency or conclusive character, provided it is corroborated by other testimony *tending* to connect the accused with the offense charged. However, in the case before us, the testimony of the accomplice, an eye witness to the killing, who testified in detail as to every incident connected with the homicide, relieves the charge of the objection that might otherwise be cogent, and demand a reversal of the case. This charge as to form should not be given in any case. See opinion on rehearing for discussion of the proposition, and collation of authorities.

**10.—Same—Requested Charge—Properly Refused.**

Where the evidence conclusively showed that appellant Howard, acting together with others, killed the deceased, the blows which caused his death being struck by Walker, these facts being uncontradicted by any testimony in the case, there was no error in refusing a requested charge to the effect that the appellant Howard would not be guilty, unless he acted with and knew at the time that Walker struck the deceased, that he had the specific intent to kill him. The law of principals, as well as the converse being clearly presented in the main charge.

Appeal from the District Court of Brown County. Tried below before the Hon. J. O. Woodward, Judge.

Appeal from a conviction of murder, penalty twenty-five years in the penitentiary assessed against each of appellants.

This is the third appeal of this cause. The parties charged were first tried separately, convicted, and all of the cases were reversed on appeal. See Howard v. State, 242 S. W. 739; Willman v. State, 242 S. W. 746; Walker v. State, 242 S. W. 749. The parties were again tried, and convicted, and upon appeal the cases were again reversed. See 252 S. W. 543. After the reversal Willman was again tried, and convicted, and on appeal his case affirmed. See 268 S. W. 933. In the cases above referred to a sufficient statement of the facts will be found.

*Calloway & Calloway* of Comanche, for appellants.

*McClellan & Cross* of Gatesville, *Sam D. Stinson,* State's Attorney, and *Nat Gentry Jr.,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—The appellants were convicted in the District Court of Brown County for the offense of murder, and their punishment assessed at confinement in the penitentiary for twenty-five years.

Appellants and one Willman were charged with the murder

of Jack McCurdy in Comanche County in 1921. The parties charged were first tried separately; they were convicted and all cases were reversed upon appeal. Howard v. State, 242 S. W. 739; Willman v. State, 242 S. W. 746; Walker v. State, 242 S. W. 749. The parties were again tried and convicted and upon appeal the cases were again reversed. 252 S. W. 543. After this reversal Willman was again tried and convicted and his case this court affirmed. 268 S. W. 933. In the cases above referred to a sufficient statement of the facts will be found.

By bill of exceptions No. 1 appellants complain that when the witness Henry was on the stand he was permitted over objection of the defendant to state in substance that on the next morning after the alleged killing had taken place the night before that he went back to his home and hid a certain pair of spurs belonging to the deceased, north of his house some 40 or 50 yards and hid a whiskey coil or piece of pipe soldered to the top of a can, the same being the property of said witness and another party, and that thereafter the sheriff of Comanche County and his two deputies were permitted while testifying for the State to state over the objections of the defendant that on one occasion some twenty days after the offense was supposed to have happened, they went in company with the accomplice witness to the scene of the supposed killing and under Henry's direction they found the articles, that is the spurs and the whiskey coil where Henry had theretofore testified that he had hid them. The court in signing this bill states that the sheriff and his deputies never testified anything that the said Henry told them, and states that the statement of facts will bear the court out in making this statement. In view of the court's qualification to the bill, we have examined the testimony of the witnesses named and we fail to find where they gave any such testimony. On the contrary, we find that the testimony of said witnesses as given on this trial was held admissible by this court in the first appeal of these cases. Howard v. State, 242 S. W. 739; Willman v. State, 242 S. W. 746; Walker v. State, 242 S. W. 749.

By bill of exceptions No. 2 appellants complain that while the witnesses Arther, Edwards and Marshall were on the stand testifying in behalf of the state they were each permitted to testify and did testify over defendant's objections in substance and effect:

That on an occasion about 20 days after the alleged homicide occurred they visited the scene of the supposed homicide in

company with the accomplice witness, Earl Henry, and in his company and under his direction that they found three certain piles of ashes or certain piles of ashes some eight or ten steps southwest of the home of W. W. Willman, and at a place where the accomplice witness, Henry, had pointed out to them where he claimed the offense occurred, and that they, the witnesses, dug under these piles of ashes and the ground thereunder was moist while around the ashes it was dry and hard.

In signing this bill the trial judge says that the statement in said bill of exceptions with reference to Arther, Edwards and Marshall's testimony is not true, and that no exception was ever taken, and the statement of facts in the case will show that the statements in said bill of exception is untrue. Under this condition of the record, we cannot do otherwise than hold that the bill fails to manifest any error.

By bill No. 3, appellants complain that while the defendants Ed Walker and Howard, and while Mrs. Willman and Mrs. Howard were on the stand testifying, they were each forced to testify and did testify over the defendant's objections that on the night after the supposed homicide had occurred and beginning about 10 or 11 o'clock on the night the homicide was supposed to have happened about dark that each of them took some part in making some whiskey or boiling off some mash in the home of W. W. Willman, at which place the offense was supposed to have happened; and they were forced over the objections of the defendants to detail and go into the minutest descriptions of the details of such offense and such act and in every particular thereof. This bill is approved by the court with the qualifications that Mrs. Howard did not testify anything about the whiskey made at Willman's that night; and that the first that was testified about whiskey being made at Willman's that night was by Ed Walker himself in direct examination by Mr. Callaway; and that the whiskey was again referred to by witness Howard in his direct examination by Callaway; and the whiskey matter was first referred to by Mrs. Willman in direct examination by Mr. Callaway when she said "I did not tell them (meaning the grand jury) the truth about it because we were making whiskey down there and we did not want them to know it." The court further states that he limited all testimony as to whiskey making brought out by the state to the credibility of the witnesses and allowed it for no other purposes. Under this condition of the record, the bill of exceptions No. 3 fails to show any error. Art. 811, Vernon's C. C. P., and many authorities there collated.

Appellants also complain at the court's action in refusing to give their special charges to the jury. The first of these was a peremptory instruction to acquit and it was properly refused.

The second charge asked the court to instruct the jury as a matter of law that malice aforethought was not in the case. A reference to the facts disclosed by this record and detailed in the former opinions of this court in these cases is sufficient, we think, to justify the statement that no error was committed by the court in refusing this charge.

By special charge No. 3, appellants sought to have the court charge on the presumption arising from the use of a weapon which was not per se deadly. The special charge offered on this question was not correct. Among other things it asks the court to instruct the jury that

"If you should believe and find from the evidence that Ed Walker struck and killed Jack McCurdy with something, this fact alone would not show that Ed Walker intended to kill deceased at the time he struck such blow, but you must first find and believe beyond a reasonable doubt from other facts and circumstances in evidence before you, that the said Ed Walker had the specific intent to kill deceased, and unless you so find the fact to be from such other facts and circumstances in evidence, then you will acquit the defendant of any grade of culpable homicide."

This charge is not correct and did not state the law. It is erroneous in the assumption that the fact of Walker's striking the deceased is as a matter of law insufficient within itself to show an intent to kill. And it is further erroneous in requiring the jury to believe beyond a reasonable doubt from other facts and circumstances in evidence besides the striking of the blow that Walker intended to kill the deceased. The jury had a right to consider all the facts and circumstances, including the striking of the lick itself, in determining the appellant's intent at the time he acted, and the failure to give the special charge embodying the foregoing propositions was not error. Again we hold that we would not be authorized to reverse this case on account of the court's failure to give this charge because under the entire record such an omission was not calculated to injure the right of the appellants. Art 743, Vernon's C. C. P.

By special charge No. 4, appellants sought to have the court to charge the jury on the question of manslaughter. There was no manslaughter in the case. If the state's testimony is true the appellant and his co-principals called the deceased out

and deliberately beat him to death, wrapped his body in a quilt, carried and laid him on a railroad track, and told their co-principal Henry if he told it they would kill him. There is utterly lacking in the case any fact or circumstance tending to show either adequate cause or sudden passion viewed from the state's standpoint. The appellants' defense was an alibi and of course the testimony showing an alibi did not raise the issue of manslaughter.

The other special charges offered, where they correctly state the law, were in our opinion fully covered by the court in his main charge to the jury.

In fact, we think that practically every question of moment raised by the appellants in this case and not discussed herein has been decided adversely to their contention in the former appeal of the cases of these appellants and their co-principal Willman.

Finding no error in the record, it is our opinion that the judgment should be in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Appellants insist that there was prejudicial error in failing to charge on the issue of manslaughter. In their testimony the appellants denied any connection with the homicide. They claimed that from the testimony of the state's witness, Henry, the issue of manslaughter arose. Henry testified that he and the deceased went to the home of Willman and there found Willman, his wife and Mrs. Howard; that Walker and Howard later arrived on horseback. Walker asked McCurdy if he had been before the grand jury. McCurdy replied that it was none of his business. At that time the parties were all together. From Henry's testimony we quote:

"He (Walker) told Jack it would be in a minute, and punched Willman. They got hold of Jack's arm, Walker holding his right arm and Willman his left, and led him away from the house. Walker asked him then if he had been before the grand jury, and Jack told him that it was none of his G—— D—— business. So Walker told him it would be and reached down and picked up something and knocked him in the head with it.

I don't know what he picked up, a wagon spoke it looked like to me—he hit him right across the head there. * * * He hit him with both hands and Jack kind of groaned and fell. Walker hit him again right back of the head, and after he rolled over there then he hit him right across the face."

Henry also gave testimony to the effect that some three weeks prior to the homicide Henry, Walker and McCurdy were engaged in making whiskey together; that due to a difference between Walker and McCurdy, Walker sold his interest in the still to McCurdy. Henry testified that during the day preceding the homicide, at night, Walker had asked Henry if McCurdy had gone before the grand jury at Comanche that day. Henry said he did not know and Walker replied: "We will kill the son-of-a-bitch if he gives anything away." There was evidence that in the evening of the day on which the homicide took place the appellants, Howard and Walker, met the witness LaGrone at the village of Hasse. Walker asked him if he had seen Jack McCurdy, and upon receiving a negative reply, said that if he ever saw Jack McCurdy any more, no one else would ever see him alive. McCurdy had been at Hasse on the morning of the day. Other testimony in the case indicates that it was a short time after this conversation that Howard and Walker arrived at the home of Willman, where the homicide took place. Henry also testified that when Willman and Walker led McCurdy from near the house to the place where the homicide took place, that Howard led him (Henry) off in another direction. After McCurdy was struck, according to his testimony, Henry fled. Howard fired at him and commanded him to return. Howard and his companions then forced Henry to assist them in taking McCurdy's body and depositing it upon the railroad track.

The testimony in the case on the previous trials will be found in Willman v. State, 92 Texas Crim. Rep. 77; Howard v. State, 92 Texas Crim. Rep. 223; Walker, Howard & Willman v. State, 94 Texas Crim. Rep. 653; Willman v. State, 268 S. W. 933. Reference is made to the reports mentioned for a more comprehensive statement of the facts.

Appellants, in support of their contention that there was error in refusing to charge on manslaughter, cited many cases to the point that where the issue of manslaughter is raised by the evidence, the jury, in an appropriate instruction, should be called upon to solve the issue. See McLaughlin v. State, 10 Texas Crim. App. 359; Halbert v. State, 3 Texas Crim. App. 656; Arnwine v. State, 49 Texas Crim. Rep. 5; Pickens v. State,

86 Texas Crim. Rep. 567; Steen v. State, 88 Texas Crim Rep. 257; Lewis v. State, 231 S. W. 113. The issue of manslaughter arises when, by adequate cause, the mind of the assailant is rendered incapable of cool reflection. From the testimony quoted and relied upon by the appellants, it appears that the deceased, McCurdy, knew that Walker had committed a felony and that Walker was apprehensive that McCurdy would disclose his knowledge to the grand cjury. There were circumstances leading to the belief that on the day of the homicide appellants believed that McCurdy had been to the county seat. Walker indicated his intent to kill McCurdy upon conditions named. Immediately before the tragedy McCurdy was asked by Walker in the presence of Willman and Howard if he had been before the grand jury. His answer was evasive and calculated to convey the impression that he had. Walker and Willman, acting on concert, then conducted McCurdy in one direction while Howard led Henry in another, McCurdy having·in the meantime been told by Walker that it would be his business. Upon repeating the demand to know whether McCurdy had been before the grand jury and again receiving an unsatisfactory answer, the fatal blows were struck by Walker, Willman acting with him and Howard keeping guard over Henry. After the tragedy Walker, Howard and Willman placed the body of the deceased upon the railroad track, where it might be made to appear that he had been killed by a train. In this enterprise, Henry, through coercion, co-operated.

Appellants' counsel, in the conduct of the cases on the various trials and appeals, have shown commendable fidelity to the interests of their clients as well as ingenuity and skill in the conduct of the trials and appeals. However, we cannot find sanction in the law which supports their contention that on the present record an instruction upon the issue of manslaughter was erroneously omitted. The evidence reflects premeditation and deliberation.

In the seventh paragraph of the court's charge we find the following:

"You are further instructed that the witness, Earl Henry, is an accomplice and you cannot convict the defendants upon his testimony alone, unless you first believe his testimony is true and that it connects the defendants with the offense charged, and even then you cannot convict defendants upon said testimony unless you further believe that there is other testimony in the case corroborative of the accomplice's testimony, tending to connect the defendants with the offense

charged, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendants with its commission, and in that connection you are instructed that an accomplice witness cannot corroborate himself by his own acts and declarations."

From the paragraph of the charge quoted above and others, as compared with the main charge, we infer that corrections or changes were made in the main charge before it was read to the jury.

In excepting to the present paragraph, the use of the word "alone" was criticized; also the failure to embrace in the paragraph of the charge in question the law of reasonable doubt. The charge given has been the subject of discussion in many decisions of this court. The writer cannot better express his views than by quoting from the opinion in Anderson's case, 254 S. W. 989, 95 Texas Crim. Rep. 346, as follows:

"The paragraph of the charge quoted is like that suggested in the seduction case of Campbell v. State, 57 Tex. Cr. R. 302, 123 S. W. 583. Since this case was written this court has on several occasions indicated that the form of charge therein suggested did not accurately present the law, but owing to the state of the testimony in some cases the use of the form was not calculated to injure the accused, and was therefore not reversible error. (Abbott v. State, 250 S. W. 188; Watson v. State, 90 Tex. Cr. R. 583, 237 S. W. 298), while in other cases presenting a different state of facts it might be misleading and harmful. See Standfield v. State, 84 Tex. Cr. R. 437, 208 S. W. 532; Walker v. State, 252 S. W. 547. Where the testimony of the accomplice is so specific in giving the details of the offense as to show without question that the offense was committed through the agency of the accused, or when the other testimony is conclusive of guilt of the accused, the use of the form mentioned has been held harmless, though inaccurate. See Watson v. State, supra; Abbott v. State, supra; Walker v. State, supra. In instances where the testimony of the accomplice, while criminating in its nature, does not embrace all of the elements of the offense as well as connect the accused with its commission, the form used is misleading in that it in terms tells the jury that they may convict upon the testimony of the accomplice if they *believe it is true and believe there is other corroborative testimony tending to connect the accused with the commission of the offense.* It is obvious that in many cases where the testimony of an accomplice is used his testimony may be *true and sufficiently corroborated, but still not prove*

*his guilt.* Illustrations emphasizing this thought will be found in the Abbott case, supra.

See Spears v. State, 277 S. W. Rep. 142.

Cognizant of the trouble that has often arisen from the use of the form mentioned, it is the subject of wonder that its use is continued. In the present case, however, we find it and must, as we have done in other instances, measure its sufficiency by the evidence in hand. It is to be noted that the charge given requires the jury, as a predicate for conviction, to believe the testimony of the accomplice *to be true;* also to believe that it *connects the defendants with the commission of the offense* charged; and that *even then no conviction could be had upon the testimony of the accomplice in the absence of other testimony tending to connect the accused with the offense charged.* In the present case, the criminating testimony coming from the accomplice embraces all of the elements of the offense, and connects the accused with its commission. It therefore comes within the purview of Abbott v. State, supra; Watson v. State, supra; Anderson v. State, supra, and the precedents therein cited. If, in the present case, the jury believed that the witness Earl Henry, told the truth in the particulars in which he related the conduct of the accused, no element of the offense or the connection of the accused therewith is wanting. The corroboration comes from circumstances which have been discussed in some detail in the opinions on the former appeals. See Walker v. State, 94 Texas Crim. Rep. 653; Willman v. State, 268 S. W. 933. A review or discussion of them is deemed unnecessary further than to say that they are deemed sufficient to meet the legal measure of corroborative testimony.

Appellants requested a special charge as follows:

"Gentlemen of the Jury: It is the testimony of Earl Henry that is principally relied on in this case for conviction. Now, if you should believe and find from the evidence as a fact that at the time of the alleged killing Ed Walker and Gibbs Howard rode up to where Jack McCurdy, Earl Henry and W. W. Willman were talking and that they got down and walked up to said parties and that Ed Walker took the said McCurdy by his arm and defendant W. W. Willman took the other arm of deceased and they walked off some ten steps, and that the said Ed Walker asked the said McCurdy if he had given anything away before the grand jury, and the said McCurdy said; 'None of your God damn business,' as testified to by the said Henry; and if you should further find and believe from the evidence that the said Walker reached down and picked up some instrument and

struck the said McCurdy over the head with it and killed him, and if you should further find that the said Howard fired a shot in the direction of the said Henry, as testified to; and if you should find and believe that there is other evidence in the record, aside from that of the witness, Earl Henry, which corroborates his said testimony sufficiently, as corroboration is defined to you, and you should believe both the evidence of the said Henry and the corroborating testimony to be true, still you cannot convict the defendant, Gibbs Howard, for any grade of homicide unless you should further believe and find from the evidence, beyond a reasonable doubt, that the said Gibbs Howard knew before and at the time the said blows were struck by the said Walker that said Walker was going to strike and was striking the deceased with the specific intent to kill; and unless you so find you will acquit the defendant, Howard, and say by your verdict, 'Not guilty.'

"This charge is given you as a part of the law in this case and you will consider it and give it equal weight with the main charge herein."

The court also charged on alibi, which was the defensive theory of the appellants, and on aggravated assault, based upon the absence of intent to kill. He also gave several special charges, one instructing that if Walker struck the blow with an instrument which was not a deadly weapon without the intent to kill, there could be no conviction of any degree of homicide. Another special charge given was in substance to the effect that if the instrument was not a deadly weapon, there could be no conviction unless the evidence showed that Walker had a specific intent to kill.

The court instructed the jury on one phase of the law of principals, namely, that one is a principal who, being present and knowing the unlawful intent, aids by acts or encourages by words or gestures, those engaged in the unlawful act. See Vernon's Tex. Crim. Stat., Vol. 1, Art. 75.

The evidence in the case and, in fact, the recitals in the special charge requested, seem to raise at least one, if not two, other elements of the law of principals. In Art. 78, Vernon's Tex. Crim. Stat., Vol. 1, it is declared that any person who advises or agrees to the commission of the offense and is present when it is committed is a principal thereto, whether he aids or not in the illegal act. According to the evidence, Howard was present when McCurdy was killed. He, in company with Walker, had been searching for McCurdy at Hasse; had been informed that he had been there; and in Howard's presence

(according to the evidence of LaGrone) Walker said that after he saw McCurdy no one else would ever see him alive. At the time this remark was made, Walker and Howard were on their way from Hasse to the home of Willman, where the homicide took place. In Howard's presence, Walker there accosted McCurdy about reporting to the grand jury. The conduct of Walker, Willman and Howard, as detailed by the testimony of Henry, is indicative of a pre-arrangement to kill the deceased. Walker and Willman, after exchanging a signal, took McCurdy to one side, and Howard, apparently acting with them, took Henry aside. When the fatal blow was struck by Waker and Henry sought to escape, Howard restrained him from doing so by firing at him and also acted with Walker and Willman in forcing Henry to aid in endeavoring to suppress the evidence of the crime by putting the body of McCurdy upon the railroad track.

In so far as the special charge refers to the knowledge of Howard, it covers a subject which was embraced in the main charge to the extent that in that charge the jury was told in substance that to hold Howard as a principal *he must have known of the unlawful intent of Walker in striking the fatal blow.* That is not the language but the meaning of the charge that was given.

The only affirmative defense is alibi, which was accurately submitted to the jury.

There was no affirmative evidence that Howard was ignorant of Walker's intent, and therefore the law did not demand an affirmative charge on that issue. The charge requested was so framed as to withdraw from the jury the evidence which tended to make Howard a principal under Art. 78, supra. It was therefore properly refused.

The motion is overruled.

*Overruled.*