ED WALKER ET AL. v. THE STATE.

No. 7621.   Decided May 16, 1923.

Rehearing Denied June 20, 1923.

1.—Murder—Accomplice—Corroboration—Charge of Court.

Where, upon trial of murder, the conviction depended principally upon the testimony of an accomplice, and the question was whether the same was sufficiently corroborated by other evidence to sustain the conviction, a

charge of the court which in substance instructed the jury that they could not convict the defendants upon the testimony of the accomplice alone, unless there was other evidence tending to support his testimony and which satisfied the jurors that he was worthy of credit, it is reversible error.

### 2.—Same—Accomplice—Corroboration—Rule Stated.

Not only must the jury believe the accomplice's testimony to be true, and that it is corroborated, but it and the other testimony must make out the case beyond a reasonable doubt, and the jury should be told directly and pertinently. Following Standfield v. State, 84 Texas Crim. Rep., 448.

### 3.—Same—Accomplice—Reasonable Doubt—Rule Stated.

In every criminal case in which an accomplice witness is used, as well as in all others, the evidence must show the guilt of the accused beyond a reasonable doubt, and this cannot be shown by accomplice testimony, unless supplemented by other testimony tending to connect the accused with the commission of the offense.

### 4.—Same—Requested Charges—Accomplice.

The rights of both the State and the accused could have been conserved, the faults in the charge obviated and approved precedents followed by adopting the language of one of the requested charges by the defendants in lieu of that embraced in the main charge, which was so framed as to convey to the jury the idea that they were privileged to find the defendant guilty upon the testimony of the accomplice, provided there were other facts in the evidence which in their judgment rendered the accomplice worthy of credit; which requires a reversal of the judgment.

### 5.—Same—Rehearing—Accomplice—Charge of Court.

The charge of the court on accomplice testimony did not tell the jury that the corroborative evidence must tend to connect the accused with the commission of the offense, and while these words are used they are given in such connection as that the jury who were laymen might easily become confused.

### 6.—Same—Rule Stated—Accomplice—Corroboration.

If the purpose of the law-makers had been to only require that the jury be satisfied that the accomplice was worthy of credit, they would have said so, and the charge under consideration is so worded as in effect to say that the test of corroboration is, "Does it satisfy the minds of the jury that the accomplice is worthy of credit," this is not the test laid down in the law. Overruling Murphy v. State, 65 Texas Crim. Rep., 55; Cole v. State, 156 S. W. Rep., 929; Forson v. State, 234 S. W. Rep., 913.

Appeal from the District Court of Hamilton. Tried below before the Honorable J. R. McLellan.

Appeal from a conviction of murder; penalty, ninety-nine years as to Ed Walker and sixty years as to Howard and Williams, imprisonment in the penitentiary.

*Callaway & Callaway,* for appellant. Cited cases in opinion.

*R. G. Storey,* Assistant Attorney General, *Joe H. Eidson,* District Attorney, for the State. Cited cases in opinion.

MORROW, PRESIDING JUDGE.—The conversation is for murder; the punishment of Walker is fixed at confinement in the penitentiary for a period of ninety-nine years and that of Howard and Williams, each, sixty years.

Jack McCurdy, a young married man, had charge of a ranch consisting of eighteen hundred acres of land upon which he lived in a house alone. Another house was occupied by Howard and Willman and their wives; another by Earl Henry and wife. Walker lived nearby and worked for Willman. These habitations were all near each other. Willman's home was about fifty yards from the Frisco Railroad tracks, which going in a general course northeast from southwest, passed the town of Hasse, which was about two miles southwest of the home of Willman. On the evening of the 12th of May, a train going south passed Hasse at 7:30 A. M. and one going north at about 9:30; another went north at 1:42 on the morning of the 13th of May. On the evening of the 12th of May, the deceased McCurdy was at the Willman home. · On the morning of the 13th his body, in a mangled condition, was discovered on the railroad track mentioned at a point near a trestle about midway between the home of Willman and the town of Hasse. The condition of the scattered remains along the track is demonstrative of the fact that his body was mutilated by a north-bound train. It is also shown that before the train struck him, his boots were taken from his feet. They were near his body, but their condition and that of his feet and socks made it evident that they were not on his feet at the time he was run over. From the scarcity of blood near his remains along the track, it was the opinions of physicians that he was dead before he was mutilated by the train.

The State advances the theory that the deceased was killed at the home of Willman and his body put upon the track. The appellant's theory is that while in an intoxicated condition, he was walking on the track and was killed by a train. They introduced testimony showing that he left the Willman home alone, expressing the intention to walk to the village of Hasse, where his mother lived, and that one of the appellants walked with him to a point near the railroad, aiding him on account of his intoxicated condition.

The State used the witness Earl Henry, who was under indictment for the same offense and whose status as an accomplice is established by his own testimony.

The many words in the statement of facts render it impracticable to incorporate in this opinion more than a mere synopsis of the testimony. What follows in this connection is from the testimony of Henry: During the day of the 12th of May, he and deceased were at Hasse. About five o'clock, both riding on the same horse, they left Hasse and went to the home of Henry, at which they found Henry's wife. She left, and after a time, they went to the home of

Willman on foot, walking in a path where the condition of the soil left footprints of the shoes of Henry and the boots of the deceased McCurdy. They found Willman at home, as well as the wives of both Willman and Howard. Walker and Howard soon arrived on horseback, one riding a gray and the other a black horse. Walker asked McCurdy if he had given anything away to the grand jury. McCurdy replied that it was none of his business. The deceased called their attention to the fact that certain articles used in the manufacture of whisky and belonging to them must be removed from his land. Walker then picked up something that "looked like a wagon spoke" and struck McCurdy on the head and face several times and killed him. Mrs. Willman screamed. Upon Henry's starting to run away, Howard demanded that he return and fired at him. Henry returned, and at the command of Howard, aided in wrapping the deceased in a quilt, after which the body was put in front of Walker on the black horse while Willman rode the gray horse and held the feet. Henry was commanded to go on foot to the railroad track, Howard holding a pistol in his hand on the way.

While the body was on the ground some blood was spilled. The route taken by the parties from Willman's home to the railroad track and the place where the body was deposited was described by Henry. The boots of the deceased were taken off in order that Willman might wear them and make some tracks along the side of the railroad track. He left for that purpose and upon his return the body was deposited upon the track and the boots thrown near it. Willman and Walker returned on horseback while Henry and Howard went on foot. Henry was enjoined to keep silent and threatened with death if he revealed the crime. He was told to hide the spurs of the deceased and the coils used in making the whisky, as well as. everything else used in that condition. The spurs and coils were hid by Henry. A barrel belonging to the deceased was removed by some of the appellants.

The record supports the finding by the jury from evidence independent of that of Henry of certain circumstances which are relied upon to corroborate. Among them we mention these: The testimony of the physicians and the circumstances showing the condition of the remains and the fact that the boots of the deceased were removed, without going into details, we think, are sufficient to esablish the fact that he was killed before the train struck him. The appellants and Henry were associates and co-principals in the illicit manufacture of whisky. This was known to the deceased. The grand jury was in session. The deceased and Henry and all of the appellants were at the home of Willman on the evening of the homicide. This is conceded. However, it is claimed by the appellants that Walker and Howard did not arrive until after the departure of McCurdy. After leaving Hasse, the deceased and Henry went to the

home of Henry and were seen by his wife. After she left, Henry and the deceased went on foot to the home of Willman. The footprints of the two were found in the path after the homicide, going from the house of Henry to that of Willman, but only the footprints of the shoes returned. The spurs of the deceased were found where Henry had hidden them, and the same is true of the coils. The barrel was removed by one of the appellants and hidden in a creek. There were footprints in the path near the railroad at the point where Henry claimed that Willman walked while wearing McCurdy's boots. A saddle borrowed by one of the appellants immediately before the homicide was afterwards found to have upon it spots described by some of the witnesses as blood which had not previously been upon it. Coinciding with the time that Henry says the deceased was killed at Willman's home, neighbors of Willman heard the screams of a woman and the report of a gun or pistol.

From the testimony of the appellants supporting the alibi of Walker and Howard, they inquired for McCurdy and went to the house in search of him. After the body was found, Henry disclosed knowledge of the cause of the death of McCurdy. On the trial he claimed that this was responsive to the threats of the appellants. On the route designated by Henry as that traveled in removing the body, there were found horse tracks showing peculiarities coinciding with those of the horses possessed by the appellants. Near the place where the body was found horses had been hitched and men had been walking. At the point where Henry claims the deceased was killed, the ground was hard save in places covered by ashes under which there was moisture, which might have been made by the blood spilled at the time.

No effort has been made to state all of the testimony nor to particularize all of the facts relied upon as corroborative of Henry. While many of the circumstances are controverted, the truth of them was for the jury, and if found to be true, they may reveal facts independent of the testimony of Henry, sufficient to support the jury's finding that they tended to connect the appellants with the commission of the offense. It is not upon one circumstance alone that reliance is had but the cumulative weight of a series of circumstances and it is in this light that the sufficiency of the evidence must be judged.

In the admission of testimony, the decision of this court upon the former appeal appears to have been followed. See Howard v. State, 92 Texas Crim. Rep. 222; Willman v. State, 92 Texas Crim. Rep. 77; Walker v. State, 92 Texas Crim. Rep. 296. While, as indicated, the evidence independent of that of the accomplice might not be inadequate, much of it is controverted and is in conflict with the theory of alibi supported by appellants' testimony. There are many self-contradictory statements of Henry found, and on the whole, the case is one demanding great care on the part of the trial court

94 T. C.—42.

in guarding the rights of the appellants to an acquittal unless the jury found that there existed facts such as the law demanded to corroborate the accomplice. Upon that issue the court's charge reads as follows:

"You are instructed that the witness Earl Henry is an accomplice and that you cannot convict the defendants, or any of them upon his testimony alone, unless you first believe that his testimony is true, and that it shows that the defendant, or defendants, is or are guilty of the offense charged in the indictment, and even then you cannot convict upon such testimony unless you further believe that there is other testimony tending to connect the defendant, or defendants, with the offense charged in the indictment. . And such corroboration is not suffcient if it merely shows the commission of the offense, but such facts must point to the accused as guilty participants in the offense. And an accomplice cannot corroborate himself by his own acts or statements. *In this connection you are instructed that corroborative evidence need not be direct and positive independent of the testimony of the said Earl Henry, but proof of such fact and circumstances, as tend to support his testimony, and which satisfy the jury that he is worthy of credit as to the facts essential to constitute the offense of murder as hereinbefore defined to you, and which tend to connect the defendant or defendants with the commission of the offense charged, satisfies the law with reference to corroboration, and it is for you to determine and say from all the facts and circumstances in evidence before you whether the witness Earl Henry has been sufficiently corroborated within the meaning of the law on that subject as given you in charge."*

Several objections in writing were urged against this paragraph of the charge. Special emphasis was laid upon that part of it italicized in the above quotation. Special charges were presented which stated the law relative to accomplice testimony in a manner that has frequently been approved by this court as being in accord with Article 801, Code of Crim. Proc., forbidding the conviction of one accused of crime upon the uncorroborated testimony of the accomplice.

An accomplice witness is one who is criminally connected with the offense on trial. At times his connection with the offense is not in dispute; in others, it is a subject of controversy. On some occasions the testimony of the accomplice is vital; in others his testimony is to facts criminative in their nature, which are not essential to conviction. The frequency with which a witness tainted with the offense is used upon the trial and the variety of phases which the testimony of such witness assumes, the restrictive effect given by our statute upon their testimony and the necessity in cases in which the testimony of such witness is of importance to intruct the jury in such a manner that they will understand that the testimony of such witness alone

will not support a conviction, has, throughout the history of this court, given rise to numerous instances in which it has been called upon the review the action of the court with reference to the testimony of a witness who was an accomplice or who is claimed to have been any accomplice. The statute upon the subject reads thus:

"A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient, if it merely shows the commission of the offense." (Art. 801, C. C. P.)

Its application has been so perplexing and embraced in such variety of terms that this court on one occasion, at least, undertook to suggest an appropriate form of charge. See Campbell v. State, 57 Texas Crim. Rep. 302. That charge has been found sufficient in many cases but not adequate in all. Of this it was said by Judge Hawkins in Watson's case, 90 Texas Crim. Rep., 576, 237 S. W. Rep. 298.

"The charge has been approved in many cases, and sometimes criticized. It is not appropriate under all circumstances. Where appropriate we are of opinion the charges approved in Brown v. State, 57 Texas Crim. Rep. 570, and in Oates v. State, 67 Texas Crim. Rep. 496, are better, and more in line with the suggestion in Standfield v. State, 84 Texas Crim. Rep. 437."

See Branch's Ann Tex. P. C. Sec. 709.

From the opinion written by Judge Lattimore in Abbott's case, recently decided, we quote thus:

"It will be noted that this is almost in the form laid down in Campbell v. State, 57 Texas Crim. Rep. 302, which has been followed a number of times by this court. The form laid down in the Campbell case is objectionable in at least two particulars. One is in its use of the word 'alone.' It is plain that the jury should never be told that they can convict on the testimony of the accomplice 'alone,' for this is just what they cannot do under our statute. A further objection to said form is that it is not enough in every case that the testimony of the accomplice 'connect the defendant with the offense charged.' Such accomplice testimony might be believed to be true, and it might connect the accused with the offense charged, and still not establish the guilt of the accused beyond a reasonable doubt. * * * It would, in many cases, be clearly at variance with right, justice and law to tell the jury they could convict if they believed the testimony of the accomplice to be true and that it connected the accused with the crime charged. The charge in the Campbell case should omit the word 'alone' and that part of the charge should conclude as in Oates v. State, 67 Texas Crim. Rep. 496, with a statement that the accused cannot be convicted in any event unless from all the testimony in the case the jury believed beyond a reasonable doubt that he was guilty."

Judge Lattimore, in the opinion in Standfield's case, 84 Texas Crim. Rep. 448, also said:

"Not only must the jury believe the accomplice testimony to be true, and that it is corroborated, but it and the other testimony must make out the case beyond a reasonable doubt, and the jury should be so told directly and pertinently."

It is but a reiteration to say that in every criminal case in which an accomplice witness is used, as well as in all others, the evidence must show the guilt of the accused beyond a reasonable doubt. This cannot be shown by the accomplice testimony. Where the testimony of the accomplice is sufficiently specific to prove the corpus delicti, including the connection of the accused with the offense, his testimony, if believed to be true, supplemented by other testimony tending to connect the accused with the commission of the offense, if rgarded by the jury of sufficient cogency to establish his guilt beyond a reasonable doubt, will support a conviction. Standfield v. State, supra.

In instructing on accomplice testimony in the instant case the court used language which we have not hitherto found in any of the charges, though in part it is identical with that used in Beeson's case, 60 Texas Crim. Rep. 39. That was a seduction case and controlled by a different statute. See Art. 789, Code of Crim. Procedure; also Slaughter v. State, 86 Texas Crim. Rep., 527, 218 S. W. Rep. 770. The propriety of approving the charge in Beeson's case, however, is open to question for the reason that it is not specific in the direction that the corroborating testimony is such as tends to connect the accused with the offense. It is also susceptible of the construction by the jury that they are at liberty to convict upon the testimony of the accomplice provided there were other facts sufficient to show him worthy of credit. The charge in the instant case is calculated to leave the jury under the same impression. There is no doubt but that the corroborative evidence may be circumstantial provided it otherwise fills the measure of the law as laid down in Article 801, supra, and the court may with propriety so instruct the jury. It is the imperative policy of the law written in the statute that in no case of felony can a conviction rest upon the testimony of an accomplice alone. The expressions in the charge in question which are italicized and which are made the subject of complaint are likely to leave upon the minds of the jury the contrary impression.

The rights of both the State and the accused could have been conserved, the faults in the charge obviated and approved precedents followed by adopting the language of one of the special charges requested by the appellants in lieu of that embraced in the main charge. We are unable to persuade ourselves that the charge given was not so framed as to convey to the jury the idea that they were privileged to find he appellants guilty upon the testimony of the accomplice

provided there were other facts in evidence which in their judgment rendered the accomplice worthy of credit. Such is the common law rule in jurisdiction in which there is no statute like ours. The statute abrogated that rule and established a legal measure of evidence forbidding the conviction upon the testimony of an accomplice however worthy of credit he may be deemed, demanding that in addition to his testimony there be facts proved which tend to connect the accused with the commission of the offense. As stated above, in this case there may be such facts but they rest upon testimony so complex and so conflicting that, in our judgment, a fair and legal trial could only be had under a proper charge on accomplice testimony. The language of the statute is in the charge but is qualified by the words italicized so as to render it misleading, and in a manner that may have induced the jury to convict the appellant on the idea that while the evidence, independent of that of the accomplice, believed by them did not tend to connect the appellants with the commission of the offense, it was not sufficient that it did satisfy the jury that Henry was worthy of credit.

The error pointed out requires a reversal of the judgment, which is ordered.

*Reversed and remanded.*

ON REHEARING.

June 20, 1923.

LATTIMORE, JUDGE.—The State asks a rehearing herein and cites cases in which we have approved charges similar to that given in the instant case for the giving of which this reversal was ordered. We have examined said authorities. The Forson case, 90 Texas Crim. Rep., 271, 234 S. W. Rep. 913, a burglary case, shows an exactly similar charge to that now under consideration herein and was tried before the same learned trial judge who presided in the instant trial, and our approval of the charge in the Forson case may be responsible for same having been given in the case before us. In our view, however, a careful analysis of said charge, which is quoted in our original opinion, must lead to the conclusion that it fails to measure up to a correct statement of the statutory requirement in regard to evidence sufficient to corroborate an accomplice, that is, it does not tell the jury that the corroborative evidence must tend to connect the accused with the commission of the offense. These words occur in the charge as given but in such connection as that the jury who were laymen, might easily become confused. What would be deemed sufficient corroboration under said charge? The answer might be in terms of the charge under discussion "proof of such facts and circumstances as tend to support the testimony of the accomplice and which satisfy the jury that he is worthy of credit as to those facts, essential to constitute the offense of murder and which tend to connect the de-

fendant or defendants with the commission of the offense charged, satisfies the law'' etc.   The danger and mistake of such a charge is thus made to appear by the transposition of a comma, for it needs no argument to demonstrate that the jury may not convict on the testimony of an accomplice, whose evidence is corroborated no further than is necessary to satisfy the jury that the accomplice is worthy of credit as to those facts which are essential to constitute the offense of murder and which tend to connect the defendant with such crime.   If the purpose of the lawmakers had been  to only require that the jury be satisfied that the accomplice was worthy of credit, they would have said so, but they did not.   The charge under consideration is so worded as in effect to say that the test of corroboration is,—does it satisfy the minds of the jury that the accomplice is worthy of credit.   This is not the test laid down in the law.   Murphy v. State, 65 Texas Crim. Rep. 55, and Cole v. State, 70 Texas Crim. Rep., 459, 156 S. W. Rep. 929, present similar charges; the Oates case, 67 Texas Crim. Rep., 488, 149 S. W. Rep. 1194, does not.   There are other things in the Forson, Murphy and Cole cases, supra, which may be permitted to stand in so far as said opinions conflict with this one, they will be overruled.

Appellant requests a modification of our opinion in that he asks an expression as to whether we deem the evidence sufficient to support the conviction.   We decline to express any opinion as this would require from us a discussion at length of many features of the case and the weight thereof which would better be left until we are confronted with that proposition in a case tried entirely in accordance with the law.

The motion of the State and of the appellant will both be overruled.

*Overruled.*