# JUNE, 1924.

W. W. WILLMAN v. THE STATE.

No. 8462.   Delivered June 25, 1924.

Rehearing denied, January 25, 1925.

**1.—Murder—See Former Appeals of the Cause.**

This is the third time that this case has been appealed. The parties charged were tried separately, and convicted, and the cases upon appeal reversed. See 242 S. W. 739-746-749. The parties were again tried, convicted and upon appeal the cases were again reversed. See 252 S. W. 543.

**2.—Same—Errors Assigned—Without Merit.**

Various errors are assigned to the rejection of special charges, argument of counsel, and other matters, and without setting them out, or discussing them at length, we are of the opinion that none of them present any reversible error.

**3.—Same—Corroboration of Accomplice—Held, Sufficient.**

The chief contention on this appeal is, that the corroboration of the accomplice witness Henry is not sufficient to support the conviction. In a former opinion of this case, the court in summing up this feature held that while the facts relied upon as corroborative of Henry are controverted, the truth of them was for the jury, and if found to be true, they are sufficient to support the jury's finding that they tended to connect the appellant with the commission of the offense, and met the requirements of the law as to the corroboration of accomplice testimony, and the cause is affirmed.

Appeal from the District Court of Hamilton County. Tried below before the Hon. J. R. McClellan, Judge.

Appeal from a conviction of murder; penalty, sixty-five years in the penitentiary.

The opinion states the case.

*Callaway & Callaway,* of Comanche, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the district court of Hamilton county of murder, and his punishment fixed at sixty-five years in the penitentiary.

This is the third time this case has been before us. Appellant and two others were charged with the murder of Jack McCurdy in Comanche county, Texas, in 1921. The parties charged were tried separately thereafter and convicted and all the cases upon appeal were reversed. See 242 S. W. Rep., 739, 746, 749. The parties were again tried, convicted and upon appeal the cases were again reversed. See 252 S. W. Rep., 543.

We have gone over the various errors assigned relating to the rejection of special charges and argument of counsel and each other matter complained of, as carefully as we can and, without setting same out or discussing them at length, are of opinion that none of them present any reversible error. The chief contention made on this appeal is that the evidence does not sufficiently support the verdict. This matter has been considered each time the cases have been before us. The facts have been substantially the same on each trial. Upon the last appeal, above referred to, the Presiding Judge of this court, speaking for the court, states: "The record supports the finding by the jury from evidence independent of that of Henry of certain circumstances which are relied upon to corroborate." The court then sets out at length a number of such corroborative circumstances. In summing up this feature of the case we said in that opinion:

"No effort has been made to state all of the testimony, nor to particularize all of the facts relied upon as corroborative of Henry. While many of the circumstances are controverted, the truth of them was for the jury, and if found to be true, they may reveal facts independent of the testimony of Henry, sufficient to support the jury's finding that they tended to connect the appellant with the commission of the offense."

The facts in these cases have been separately reviewed by the different members of this court upon the various appeals and no great good could be accomplished by restating them. According to the testimony of the accomplice, Henry, the deceased was killed at the home of this appellant by one Ed Walker, who with appellant, was holding deceased at the time. Said witness testified in detail to the manner of the killing and to the fact that thereafter the body was placed upon a horse upon which Ed Walker rode and beside which appellant rode on another horse and that they thus carried the body to a point near the track of the Fort Worth & Rio

Grande Railroad, upon which it was deposited by the joint efforts of appellant, Walker, Howard and witness. Witness also detailed the manner in which he and deceased had gone to the home of appellant on that night and stated that he returned from the home of appellant to his own home after the homicide and after the body was disposed of. He denied taking any active part in the killing of deceased, and claimed that he tried to make his escape from the place after deceased was assaulted and striken down, and averred that he was shot at by Howard and that a woman screamed at the house about the time of the shooting. The tracks of deceased and accomplice Witness Henry were observed going from Henry's house to appellant's house, and the tracks of two horses going side by side, were found going from appellant's house to a point near the railroad track. The track of Henry alone was also discovered going back from appellant's house to the home of Henry. About dark on the evening of the homicide a shot and a scream of a woman were heard by parties who lived in a general westerly direction from appellant and Henry. Said parties were of opinion at the time that the shot and sound came from the direction of the home of witness Henry which lay east of south from them. Appellant's home was south of east from the same place. Other circumstances appear in evidence which are set out somewhat in detail in the case of Walker v. State, reported in 252 S. W. Rep., above referred to. The matter has been in our books quite often, and for further statement of the facts reference is made to the former appeals. We have carefully weighed and analyzed, as best we can, the facts in evidence relied on as tending to corroborate the testimony of the accomplice, Henry, and we are not willing to hold that the evidence is insufficient to justify the jury in concluding that the accomplice was legally corroborated.

This being the chief question before us, and being unable to agree with appellant's contention in such regard, an affirmance will be ordered.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—By an extended motion and oral argument appellant vigorously attacks the correctness of ᴄ⁻⁻⁻ affirmance of this case, and seeks a rehearing mainly upon the proposition that the evidence is not sufficient to corroborate the accomplice, Henry. Former opinions of this court relative to these cases are referred to by appellant and contrasted, it being insisted that in Howard's case, 242 S. W. Rep., 739, this court expressed doubt of the sufficience of the corroborating testimony, which appellant insists is the correct attitude for this court to now assume in this case, and we are crit-

cized for what was said by us in Walker, et al. v. State, 252 S. W. Rep., 543, in which we said: "The record supports the finding by the jury from evidence independent of that of Henry, of certain circumstances which are relied upon to corroborate." Before proceeding to discuss the facts relied on by us to sustain our conclusion in the instant case, it may be well to call attention to some of the facts that were before the court when the opinion in Walker, et al. v. State, supra, was written. It is also stated in the opinion in that case that:

"No effort has been made to state all of the testimony, nor to particularize all of the facts relied upon as corroborative of Henry. While many of the circumstances are controverted, the truth of them was for the jury, and, if found to be true, they may reveal facts independent of the testimony of Henry, sufficient to support the jury's finding that they tended to connect the appellants with the commission of the offense. It is not upon one circumstance alone that reliance is had, but cumulative weight of a series of circumstances, and it is in this light that the sufficiency of the evidence must be judged."

From the record of the case of Walker, et al., supra, it appears that Mrs. Willman, the wife of this appellant, took the stand and testified, as did also Gibbs Howard, a co-defendant with this appellant, and Howard's wife. From these witnesses it was elicited that the appellants and Henry were associates and co-principals in the illicit manufacture of whiskey and that this was known to deceased. It was shown that the grand jury was in session, and that the deceased, together with Henry, Walker, Willman and Howard, were all at the home of appellant on the evening of the alleged homicide. The testimony for the defense in the case of Walker, et al. v. State, supra, was offered in support of the proposition that deceased left the home of appellant alone for the purose of going to Hasse, where he lived, going in a direction that would take him to the railroad track, down which led the nearest way from the home of Willman to the town of Hasse, and that a short time after he left Willman's house the noise of a passing train was heard. The theory of the appellants throughout all of the cases has been that deceased came to his death by being run over by a railroad train, and that he was not murdered and his body placed on the railroad track, as contended by the State and testified to by the accomplice Henry.

It might be stated in this connection that this court has never doubted the proposition that there was abundant evidence to show satisfactorily that McCurdy was killed and his body placed upon the railroad track after his death. Being satisfied on this point, and the testimony offered by the defense, as well as that by the State, fixing the presence of deceased at the home of appellant on

the evening of May 12, 1921, and also fixing the presence there of the
three men who are now charged with the murder of McCurdy, and
these facts being further attended and surrounded by other cir-
cumstances which were not discussed, showing that a murder was
committed at the home of Willman on said night, it appeared to us,
as stated in substance by Judge Morrow in the opinion in Walker,
et al. v. State, *supra,* that the evidence was sufficient to corroborate
that of accomplice Henry.

Reverting to the facts in the record before us, and discussing them
with a view of a decision of the question as to the sufficience of the
testimony to corroborate the accomplice Henry, which will be the
only question discussed, the others raised in the motion not being
deemed sufficient to call for the granting of the motion or to re-
quire discussion, we observe:—Henry says the murder was com-
mitted about night on May 12, 1921, at appellant's house by appel-
lant and Ed Walker, Howard being present and participating, one
of whom held deceased while the other struck him three blows,
two on the head and one in the face, with something picked up by
Walker. This took place in appellant's yard. Is there corrobo-
ration of accomplice Henry on this point? Mrs. Henry and her sis-
ter testified that they left the Henry home in the afternoon of May
12th, leaving Henry and deceased alone there. Appellant's house
was a few hundred yards south of that of Henry. A number of
witnesses establish the fact that deceased wore boots. By outside
witnesses it was shown that tracks of a boot-shod man and a shoe-
shod man walking together were found the next morning leading
from Henry's house to that of appellant. Henry swore that he
and deceased walked together in the late afternoon of the 12th
from his house to that of appellant. He said that after the homicide
he returned alone to his house. The outside witnesses also testified
to the track of the shoe-shod man alone returning from appellant's
house to that of Henry. This would tend to corroborate Henry in
stating that he and deceased went to the house of appellant that
afternoon. Henry said that when appellant and Walker knocked
deceased in the head, one of the women at the house screamed and
that he, Henry, started to run, and Howard, a co-defendant of
appellant, shot at him. Mr. Newby and his daughter lived in a
westerly direction from Henry, and a northwest direction from
appellant's house. The distance from each place to Newby's was
approximately the same. About the same time of day fixed by
Henry as that of the scream and shot. Newby and his daughter tes-
tified that they heard a woman scream and a gun fire and thought
it to be in the direction of Henry's house. The entire evidence
affirmatively establishes the fact that at that time there was no
woman at Henry's house and that the only two comparatively

near-by houses east of southeast from Newby's were those of Henry and .appellant. This tends to corroborate Henry's story that there was a scream and a gun fire at appellant's home about the time of the homicide. Henry swore that there were three bloody places in appellant's yard where the killing took place. He also testified he went back afterward with the officers and that upon each place where the blood had been in the yard there were piles of ashes. The outside witnesses swore that they found the three piles of ashes in appellant's yard; that the remainder of the yard was clay and very hard, one witness saying as hard as flint; under the ashes also the witnesses found the ground to be moist and soft and penetrable by a spade. This tends to corroborate Henry's testimony that there were .three spots of blood in the yard. Henry swore that after he and deceased got to appellant's house on the 12th, Walker and Howard, co-defendants with appellant, rode up, one riding a black and the other a gray roach-mane horse. A bay and a sorrel horse were tied to a near-by wagon. Before Walker and Howard came deceased accused appellant of pasturing on him, which appellant denied. Shortly after Walker and Howard came, words arose between Walker and deceased because of a supposed visit of deceased to the grand jury that day and appellant and Walker attacked deceased. It was in testimony that Walker and Howard were at the town of Hasse, a short distance from appellant's home, between sundown and dark that same afternoon, inquiring for deceased, and that as they rode away Walker was heard to say that if they found deceased nobody else would ever see him alive. A witness said that Walker and Howard were riding, one a black horse and the other a gray roach-mane horse. It was shown that the track of this gray horse had a noticeable peculiarity. Henry swore that after deceased was killed by Walker and appellant, they wrapped his body in a quilt, Walker got on one of the horses and the body was placed on the saddle before him, and that appellant got on the other horse and holding the feet of the deceased, they rode away in the direction of the railroad track. By outside witnesses it was in testimony that the next morning after the body of deceased was found on the railroad track, a place was observed near some elm bushes twenty or thirty steps from the place where the body was supposed to have been put on the track, and two horses were back-tracked from there to a point just west of appellant's house, the two horses coming from the direction of appellant's house toward the railroad track side by side. One of the tracks exhibited the peculiarity of the gray horse above mentioned. Other witnesses who tracked the horses away from the vicinity where the body was found on the railroad, said they went in the direction of appellant's house, and one witness said he tracked them to appellant's barn. This tended to

corroborate Henry's testimony that the murder was committed at appellant's house and the body was placed on one of the horses and that another man riding side by side with it went from appellant's home to a point near the railroad track and that there the body was placed on the track and left. Henry testified that when Walker and appellant left with the body on horseback, he and Howard walked up to the railroad track and then assisted in carrying the body and placing it on the track. He said that appellant removed the boots from the body and put them on his own feet and went away saying that he was going to make tracks along the railroad as though deceased had walked along the track, and presently came back saying that he had made the tracks. The boots were then deposited on the railroad track not far from the body. It was in testimony that boot tracks were observed on the railroad track. When the body was found the feet and lower limbs were crushed and mangled. The boots of deceased were off the body and had no flesh or blood on or in them, and were not cut or broken. Henry testified that when they left the body and started back, Walker and appellant told him and Howard they would meet them at Willman's barn. This was the point to which the horse tracks went as testified to by other witnesses. It was also shown that Walker borrowed a saddle the afternoon of the alleged homicide. When the owner got it back afterwards, there was on it a dark discoloration which a doctor said he believed to be blood.

Our statutory declaration (Art. 801, Vernon's C. C. P.,) as to the amount of corroboration necessary in case the State relies on accomplice testimony, is that there must be testimony other than that of the accomplice which tends to connect the accused with the commission of the offense. No rule has been laid down attempting to define the exact amount of testimony, nor to specify or enumerate facts which would be deemed enough or not enough to satisfy the statutory demand. Our law-makers contented themselves by saying that in such case there must be some evidence other than that of the accomplice tending to connect the accused with the offense, and in its last analysis the sufficiency of the corroboration must be determined by the facts of each case. Boone v. State, 90 Texas Crim. Rep. 374, 235 S. W. Rep., 580.

Taking all of the circumstances in this case together and bearing in mind the further pertinent circumstance that it was shown that both Mrs. Willman and Mrs. Howard were present and that no member of appellant's family was placed upon the stand to deny or combat any of the facts or circumstances put in evidence by the State, or to explain any of the criminating evidence against appellant, we are of the opinion that the evidence in this case is sufficiently strong to meet the demand of our statute, and to tend to connect appellant

with the commission of this crime. Henry says it was committed in appellant's yard, and certainly there are numerous circumstances tending to show deceased alive at appellant's place and none supporting the theory that he left there except after he was murdered, as testified to by Henry. That a man was murdered in the yard of another who offers and attempts no sort of explanation, when such explanation would be available by witnesses other than himself, would seem of itself to tend, at least, to connect him with such crime. As stated above, we have little doubt as to the proposition that the body of deceased was lifeless when placed on the railroad track. The testimony is from numbers of witnesses and abundant on this point. We have not attempted here to set out in detail all of the facts relied on, but have set out what are deemed enough to justify our conclusion.

The motion for rehearing will be overruled.

*Overruled.*

ON APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

LATTIMORE, Judge.—Appellant seeks leave to file second motion for rehearing on the hypothesis that our opinion announces the rule that the burden is on the accused to prove his innocence, and he wishes to further combat what he calls a dangerous and revolutionary theory. He especially criticizes that part of the opinion which reads as follows:

"That a man was murdered in the yard of another, who offers and attempts no sort of explanation when such explanation would be available by witnesses other than himself, would seem of itself to tend, at least, to connect him with such crime."

A reading of our opinion on rehearing would seem to make clear the proposition that after stating a number of circumstances seeming to measure up to the demand of the law of corroboration of an accomplice, we made the statement now criticized. In as much as we deem it unnecessary to grant appellant's motion we, however, elaborate our former opinion upon the particular point involved in the quotation from his motion above set out.

Underhill on Crim. Ev., in Sec. 45, says: "The failure to * * * call a material witness arouses an adverse inference. Ruling Case Law, Vol. 8. p. 173, states: "The failure of a defendant to explain incriminating facts and circumstances raises a presumption that such facts and circumstances are true." And again, on p. 169, appears the following: "What is presumed, as long as the presumption remains, need not be proved; and as to the matter presumed, the burden is on him against whom the presumption exists." Words & Phrases, Vol. 6, cites many cases defining "presumption,"

and it is stated: "A presumption of facts is an inference of the existence of a certain fact upon its necessary and usual connection with other facts which are known." See also Wigmore on Evidence, Secs. 272-278, Vol 1. As a reason for our statement, we again refer to the fact that deceased, in the instant case, was alive at Henry's house in the late afternoon as sworn to by Mrs. Henry, her sister, and Henry. The next day his tracks were found going from Henry's house to that of appellant. They were not found leaving appellant's house. The dead body of deceased was found at a point where the nearest house is that of appellant. Appellant's wife is at his home that night. Henry testifies that she screamed when the fatal blows were struck, and that a pistol was fired. Notwithstanding the testimony of witnesses aside from the accomplice, that a woman's scream and a shot were heard about the time of the murder and under circumstances which reasonably showed the sounds to have come from appellant's house, his wife is not put on the stand to explain or shed light on these tremendously incriminating circumstances. In Mercer v. State, 17 Texas Crim. App., 452, this court said:

"It was disclosed by the evidence that the defendant's wife must have known important facts bearing directly upon the issue in the case, and that she was within easy reach of the process of the court. She could have explained fully the occurrence testified about by his two daughters when he got his gun and said he would blow his brains out. She could have testified, perhaps, to many other facts which would have shed light upon this horrible transaction. It was not within the power of the prosecution to adduce her testimony; because, being the defendant's wife, she was not permitted under the law to testify against him in this case. He alone could call for her testimony, and compel its production. Her knowledge of the facts, whatever that knowledge might be, was, was at his command— was within his reach—and without he produced it, or consented to its production, it was a sealed book, which no human tribunal had the power to open against him. Under these circumstances we think the prosecuting attorney was justified in the remarks complained of and that the court did not err in its action in relation thereto."

Mr. Branch, in Sec. 372 of his Annotated P. C., quotes many authorities supporting the proposition that State's counsel may comment on the failure of defendant to produce his wife as a witness, or upon any omission in her testimony if she testifies. Why authorize and approve such comment if her failure to testify or the omission of material testimony from that given, have not probative force? Suppose the accused, being a witness, should refuse to make answer to criminating questions when put to him? Would anyone

doubt the strong inference of the truth of the matters thus unanswered? This is in the nature of the suppression of evidence and is close kin to the destruction thereof, tampering with witnesses, etc., proof of which is always admissible against the accused and may afford strong evidence of guilt.

The suppression of evidence, or failure to produce that which is known and obtainable and material, when appearing in the record as the result of the State's action, has afforded reason for the reversal of cases by this court, and this would have especial application in cases of circumstantial evidence.

We do not understand the statutory statement regarding the sufficience of corroboration, i. e., that it must "tend to connect the accused," etc.—to require that such corroboration be by evidence in the nature of direct testimony. Nor do we understand that its sufficience can be accepted or rejected by the measure of the individual piece of evidence. All the evidence must be weighed together and its probative force estimated in much the same sense as we do in a case wholly dependent on circumstantial evidence. Measured by this rule, and considering the fact of the failure of the appellant to produce material testimony which he alone could use, together with all the other facts and circumstances in this case, led us to the conclusion expressed in the opinion on motion for rehearing.

Leave to file second motion for rehearing is denied.

*Application denied.*