### LON LANGFORD v. THE STATE.

No. 14637.   Deelivered March 9, 1932.
Rehearing Denied June 15, 1932.
Reported in 50 S. W. (2d) 808.

The opinion states the case.

C. B. *Randell,* of Sherman, and *Sam D. Stinson,* of Greenville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—Appellant was convicted of being an accomplice in the crime of arson, and his punishment fixed at five years confinement in the penitentiary.

Appellant owned a rooming house in Sherman, Texas, near Kidd-Key College, which had rented for $75 or $80 per month sometime before appellant purchased the property. Appellant bought the house on December 2, 1930, from L. L. Montgomery. The cash payment recited in the deed was $2,270. Further, it was recited in the deed that appellant assumed the payment of a note on the property in the sum of approximately $5,000. The note was held by The Farm and Home Savings Association. The property was insured for $8,000. This insurance was transferred to appellant when Mr. Montgomery sold him the house. The cash consideration recited in the deed was not accurate, it appearing that appellant traded Mr. Montgomery 320 acres of land in Oklahoma, which Mr. Montgomery testified he considered worth the amount recited as cash in the deed. Witnesses for the state testified that the lot, without the improvements, was worth from $1,500 to $2,000. They said it was worth more money in normal times. The house was occupied at the time appellant purchased it from Mr. Montgomery. Appellant advised the occupant that he desired immediate possession in order that W. W. Adams of Sulphur Springs might move into the house and use it as a rooming house. Possession was surrendered on January 2, 1931. Some furniture belonging to appellant was left in the house, consisting of a bed-

room suite, some bathroom furniture, a chest of drawers, two kitchen tables and a coal oil stove. On January 9, 1931, the upper part of the house was damaged by fire. An examination of the house after the fire had been extinguished disclosed combustible material on the floor, consisting of cotton, sacks and parts of a mattress. This material had been saturated with coal oil. Some broken crockery and a five-gallon green jug were found.

The indictment charged, in substance, that W. W. Adams burned the house of appellant, said house being insured, and that prior to the commission of said offense by the said W. W. Adams, appellant did unlawfully and wilfully advise, command and encourage the said Adams to commit said offense, and did promise and agree to pay him, the said Adams, the sum of $500 in order to procure him, the said Adams, to commit the offense of arson, as aforesaid, and that by said advice, command and encouragement and by said promise and agreement, did procure and induce the said W. W. Adams to burn said house, as aforesaid, appellant not being present at the commission of said offense by said Adams. W. W. Adams testified that appellant offered him $500 to burn the house; that appellant told him the house was insured for $8,000; that he owed $5,000 on it, and would be $3,000 "to the good" if it burned; that he met appellant in Commerce, where they purchased three iron bedsteads, bed springs, and an old oil stove, which they loaded on a Chevrolet truck driven by one Ike Harrison; that appellant paid for the furniture; that he and appellant followed the Chevrolet truck along the road to Sherman; that they stopped at a filling station and bought ten gallons of coal oil, appellant paying for the oil; that at another place appellant bought some gasoline; that the coal oil was put in some five-gallon containers, one of which was a peculiar green jug; that the jugs were in sacks; that appellant asked Ike Harrison to wait for them on the outskirts of Sherman; that on reaching Sherman he (the witness) got on the truck with Ike Harrison and they drove to appellant's house; that appellant went to another place; that they reached the house after dark; that they drove in the back yard and unloaded the furniture and oil, placing it on the second floor of the house; that he and Harrison remained in the house during that night; that he left the house the next morning, telling Harrison he was going to leave town; that Harrison took the truck and left town; that on the following night he (the witness) returned to the house and stayed there until shortly after midnight, at which time he scattered the combustible material on the floor and set fire to the house; that appellant was not present; that he left the house after he set fire to it; that on one occasion appellant paid him $9, and on another $13; that he did not have any contract with appellant to rent the house; that appellant put up the deposit for turning on the lights; that he (the witness) did not withdraw the deposit. Adams admitted on the witness stand that he had told appel-

lant's counsel immediately prior to testifying that appellant was not guilty, and that he expected to so testify if called as a witness. He said, however, that he was telling the truth when he testified that appellant offered him $500 to burn the house, and that he burned it pursuant to the agreement he had with appellant. He said, further, that he hoped to receive leniency by virtue of having testified against appellant. There was testimony indicating that some of those connected with the investigation of the offense had promised Adams to aid him in avoiding punishment if he testified against appellant.

It is insisted by appellant that the testimony is insufficient to corroborate the accomplice witness Adams. This court has often, in testing the sufficiency of evidence offered to corroborate an accomplice, resorted to consideration of the corroborative evidence alone in order to see if there be in such evidence any fact which tends to point to the accused as the offender. Thedford v. State, 114 Texas Crim. Rep., 138, 25 S. W. (2d) 341, and authorities cited. The corroboration may be either by circumstances or positive testimony. Pope v. State, 81 Texas Crim. Rep., 54, 194 S. W., 590. Where a party is charged as an accomplice to a crime and the state relies upon the testimony of an accomplice, the testimony must not only be corroborated as to the fact that the offense was committed, but must be corroborated with equal cogency to the fact that the party accused as an accomplice brought himself within the purview of the statute in his advice or assistance. Lamb v. State, 101 Texas Crim. Rep., 557, 275 S. W., 1038; Hall v. State, 52 Texas Crim. Rep., 250, 106 S. W., 379.

Considering the corroborative evidence to the point that W. W. Adams set fire to the house, the opinion is expressed that the accomplice witness was sufficiently corroborated. The circumstances showed that someone set fire to the house. The witness Ike Harrison, who was not an accomplice, testified to going to the house with Adams and unloading the furniture and sacks in the house. He said that they remained in the house during the night. Appellant's testimony was also to the effect that Adams was in the house shortly before the fire. Again, the green container, in which five gallons of coal oil had been transported to the house, was found in the house immediately after the fire had been extinguished.

Considering the corroborating evidence to the point that appellant had made a trade, agreement or contract with W. W. Adams to burn the house, we find that the state relied upon the following facts and circumstances: The house was insured. The testimony tended to show that the house could not have been sold for the price that appellant paid for it. The testimony further tended to show that there was no demand for it as a rooming house, and that it had remained vacant for several months before appellant purchased it. At the time of the fire the lot was worth from $1,500 to $2,000. After purchasing the house, appellant requested

immediate possession in order that he might move Adams into the house. Appellant provided a truck for bringing some old furniture from Commerce to Sherman. Appellant purchased the furniture. He and Adams took the furniture from Commerce to Sherman together. Ten gallons of coal oil and some gasoline were purchased on the road by appellant. Appellant told the negro who was driving the truck to wait for him and Adams on the outskirts of Sherman. Adams and the negro drove to the house at night and unloaded the furniture and oil. Appellant paid the deposit for turning on the lights, although he placed same in the name of Adams. Later, appellant withdrew the deposit and indorsed Adams' name on the check. There was very little furniture left in the house when appellant secured possession of it. Only three old iron beds and a dilapidated oil stove were bought by appellant in Commerce and placed in the house prior to the fire. Appellant had told other parties that he had rented the house for $75 a month to Adams to be used as a rooming house, $5 of the rental being for the furniture belonging to appellant. Appellant paid all of the expenses of moving Adams to the house. After Adams' arrest, appellant went on his bond. Appellant owed several payments on the note he had assumed on the house, approximating more than $200.

Appellant admitted that he paid the expenses of moving Adams to his house, and tht he had paid for the furniture and oil. He said that he had rented the house to Adams for $75 per month, and that, Adams being short of money, he had paid the expenses of the trip. He testified that he had bought the oil at the request of Adams. He said Adams told him that he had to have oil for fuel. Appellant also admitted that he had put up the deposit for turning on the lights at the request of Adams. He denied that he had offered to pay Adams $500 to burn the house, and said that he had no connection whatever with the burning of the house. He said he went on Adams' bond because he was his friend.

We are unable to reach the conclusion that the accomplice witness was not sufficiently corroborated. The law forbidding a conviction upon the uncorroborated testimony of an accomplice does not demand that there be direct evidence pointing to the accused as the offender, but merely requires that there be other evidence tending to connect the defendant with the offense committed. Article 718, C. C. P.; Minor v. State, 108 Texas Crim. Rep., 1, 299 S. W., 422, 429. We quote from Minor v. State, supra, as follows: "Circumstances proved by credible witnesses may be as potent as direct testimony in tending to connect the accused with the commission of the offense. The state is not called upon to point to some single or isolated fact which in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supply the test. If by this rule it appears on appeal that before the jury there was proof

confirming the testimony of the accomplice to material facts tending to connect the accused with the commission of the offense, 'the law is satisfied.' Underhill's Crim. Ev. (3rd Ed.), secs. 129 and 130; Meredith v. State, 85 Texas Crim. Rep., 239, 211 S. W., 227; Wright v. State, 47 Texas Crim. Rep., 433, 84 S. W., 593; Huggins v. State, 85 Texas Crim. Rep., 205, 210 S. W., 804; Halbadier v. State, 85 Texas Crim. Rep., 593, 214 S. W., 349; Middleton v. State, 86 Texas Crim. Rep., 307, 217 S. W., 1046; Walker v. State, 94 Texas Crim. Rep., 653, 252 S. W., 543; Willman v. State, 99 Texas Crim. Rep., 259, 268 S. W., 933, 269 S. W., 801."

'It is not necessary that the corroborating facts or evidence should be such as to show guilt independent of the evidence of the accomplice witness. The law demands that the corroboration with some degree of cogency tend to establish facts material and relevant which would authorize the jury to credit the testimony of the accomplice. Johnson v. State, 84 Texas Crim. Rep., 400, 208 S. W., 170; Millican v. State, 109 Texas Crim. Rep., 673, 7 S. W. (2d) 82.

Appellant was convicted under the second count in the indictment. He made a motion to quash this count on the ground that it was insufficient to charge an offense. We are unable to reach the conclusion that the indictment fails to charge an offense.

Bill of exception No. 5 complains of the action of the trial court in permitting the state to introduce in evidence a check for $5 payable to W. W. Adams, the accomplice witness, and executed by the water and light company. It appears that this check had Adams' name indorsed on the back and that it had been cashed. Appellant objected to the introduction in evidence of the check on the ground that it was hearsay, irrelevant and immaterial. In connection with the introduction of the check, the district attorney was permitted, over appellant's objection, to elicit from Adams that he had not received the check and had not authorized anyone to indorse his name on it. It appears that this check was delivered to appellant for the payment of the deposit he had made for turning on the lights in the building alleged to have been burned. In objecting to the testimony, appellant's counsel stated, in substance, that it was admitted that appellant had the lights turned on. He did not admit that appellant withdrew the deposit by obtaining a check payable to Adams, and indorsing Adams' name thereon. On page 113 of the statement of facts it is shown that appellant testified on cross-examination, without objection, as follows: "I heard Mr. Adams testify and heard him testify that he and I were together here in town and he stayed in the car and I went in these different places and came out later and that is a fact. I put up a five dollar deposit on the lights in Adams' name and later on I got that money down. I just went down there after the fire and presented that receipt. It was my money. Q. Didn't you go in there and sign Mr. Adams'

name to it? A. It was my money and I wanted to explain it, there is nothing secret about it and I didn't feel that I was doing any wrong. I went up there and got the check for $5.00 and signed Walter Adams' name on the back of that check. I had no authority to do it but it was necessary to do it and the man said he had to have it to keep that record straight."

Appellant, without objection, having given the same testimony relative to the check that the witness Adams gave, is in no position to complain if the check in the first instance was improperly received in evidence. We deem it unnecessary to decide whether, in the first instance, the check was improperly admitted.

Appellant contends that bill of exception No. 17 relates to an improper remark of the court in the presence and hearing of the jury. We find no objection or exception in the bill of exception to the remark of the court. The objection seems to have been leveled at testimony touching a conversation appellant had with the insurance agent after the fire. Conceding that the remark was not proper, it was incumbent upon appellant to object at the time it was made, and bring forward his complaint in a proper bill of exception.

Bill of exception No. 20 relates to the remarks made by the district attorney in his closing argument. The remarks were as follows: "Here is another defense, gentlemen of the jury: The defense is that the defendant in this case has a reputation of being a peaceable, law-abiding citizen, and that it is good. Have you ever sat around the courthouse much and sat there day in and day out, regardless of who was tried? Did you ever in your whole life see any man tried that there could not have been a few men found to testify that his reputation was good?"

If the argument was improper,—and this is not conceded,—we do not consider it to be of a nature that would warrant a reversal. Many witnesses testified that appellant's general reputation for being peaceable and law abiding was good. The jury saw and heard these witnesses. We do not believe the argument of the district attorney could have added anything to the general knowledge of the average jury, based on human experience, that most men can secure some witnesses to testify that their reputation in the respect mentioned is good. The opinion is expressed that the remarks were not calculated to prevent the jury from properly exercising their prerogative of determining the credibility of the witnesses and the weight to be given to their testimony.

An examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been exam-

ined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant has a lengthy motion in which he recites much of the testimony, apparently with a view of trying to get this court to change its mind, and to hold that the accomplice was not sufficiently corroborated. We have again gone over the testimony in the case, in the light of of the motion, but are unable to bring ourselves to believe that we were in error.

As stated, substantially, in our former opinion, the corroboration of an accomplice in many cases must rest upon circumstances. There is no question in this case but that on the 9th of January, 1931, a house belonging to appellant, situated in Sherman, Texas, near enough to other buildings to endanger their safety, was burned. There is practically no doubt, aside from the testimony of the accomplice, that the fire was of incendiary origin. A number of witnesses testified to the strong odor of coal oil that pervaded the upper part of the building where the fire seemed to have originated, and to the finding of cotton, old sacks, parts of a mattress, etc., scattered around in the building which appeared to have been saturated with coal oil. Motive for the wilful burning of the building, apparently, could not exist on the part of any person other than appellant. He had had title to the property for only about a month. The building was insured for several thousand dollars more than its value, and above the encumbrance on the property. Two of the three insurance policies on the building were due to expire in the early spring of 1931. That appellant borrowed a truck, hired a negro to drive it, bought three iron bedsteads with springs, also a coal oil stove, paying for the lot of stuff the sum of $15, loaded this second-hand furniture on the truck in question, in which he was aided and assisted by the accomplice Adams; in another car and with Adams substantially accompanied the truck which in some places went one road and appellant and Adams another, to Sherman; bought ten gallons of coal oil on the road to Sherman and put it in the truck; that he put Adams out of his car and into the truck with the negro driver when they reached Sherman; that Adams and the driver took the coal oil and the furniture to the house which was burned the following night, unloaded it and put it in the house,—all these facts seem established by testimony other than that of the accomplice. Adams fully made out a case of guilt. We are not undertaking to enumerate all the corroborative facts, but have iterated some in addition to those set out in our original opinion. It is true that appellant introduced testimony reflecting upon the character and reputation of the accomplice. It hardly needs discussion to call attention to the fact that men of good reputation and character do not ordinarily sell their services for money to men who desire houses burned. It was also in testimony from a number of wit-

nesses that the mind of the accomplice was not good, though this was combated by the testimony of a number of people who had been with and observed said accomplice.

We are of opinion the motion for rehearing is not well taken, and same will be overruled.

*Overruled.*