Bob Hawkins v. The State.

No. 15807.   Delivered April 12, 1933.
Rehearing Denied May 24, 1933.
Reported in 60 S. W. (2d) 227.

The opinion states the case.

*L. D. Hartwell, T. F. Ragsdale,* and *B. F. Crosby,* all of Greenville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Robbery with firearms is the offense; punishment, 14 years in the penitentiary.

The evidence shows that about 12:45 o'clock on the night of November 16, 1932, two young men came into the Gulf Filling station on Lee St. in the city of Greenville and one of said young men held a pistol on the employee in charge of the station and required him to open the cash register, from which they took about $11.00 in money.  The two young men who entered the filling station were afterwards identified as Barney Smithhart and Sam Sapp.  The filling station employee who was robbed testified that after they had obtained the $11.00 they told him to go back of the station on the east side and when he got to the front door he heard a car start down the street

towards the filling station. At that time the two men, Smithhart and Sapp, were right in behind him; that the car he saw move toward the filling station was a blue or black coupe, model A Ford, 1930 or 1931 model. When he first saw the car it was in the middle of the driveway somewhere near the middle of the street; that the two men who held him up ran towards the car. There was a third man in the car who opened the door and they got in. The car then left going west on Lee Street. The lights on the car were off the last he saw of it.

Barney Smithhart testified for the state that he was one of the persons who robbed the filling station on the night of November 16, 1932. He testified that he lived in Dallas and had lived there about 19 years; that he had known the defendant, Bob Hawkins, about a month. On the 16th day of November, 1932, he saw the appellant at his (the witness') house about 11 o'clock. When the appellant came to the house Sam Sapp was with him. The appellant and Sapp came to his house in a model T Ford with a little truck body on it that belonged to the appellant. Appellant stated that he wanted to go to Greenville and wanted the witness to go with him. The appellant then asked the witness to borrow a car from a Mr. Reeves, which the witness did. The witness further testified that the appellant told him he wanted to go to Greenville to make some money, that is, to rob somebody. The understanding between him and the appellant when he went to get the Reeves car was that the appellant and Sam Sapp were to meet him about a block from the witness' house. He further testified that the appellant drove the car from Dallas to Greenville and the car he borrowed from Reeves was a model A Ford coupe. When they got to Greenville, they went to the appellant's mother's house and went in the house from the back and ate dinner and stayed there about two hours. They then got in the coupe and drove out into the country for a few miles for a ride. They drove around continuously all the time until late in the night. While they were driving around they went to a sandwich shop on Lee Street. The appellant was driving the car and the witness and Sam Sapp went in the sandwich shop while the appellant stayed out in the car. The appellant at that time had on an overcoat and had a scarf around his neck. The witness and Sam Sapp went into the sandwich shop and drank a cup of coffee. They went into the sandwich shop at the instance of the appellant to rob it, but did not do so on account of several persons being in there. They then drove out on the pike towards Sulphur Springs and ran out of gas and he and Sam Sapp went to a filling station and got a quart of gas and the

appellant stayed in the car. The car was about two or three hundred yards from the filling station when it ran out of gas. After they had gotten the quart of gas and put it in the car, they then went up to the filling station and got eight gallons of gas, the appellant driving the car at the time. After driving around a while, they came back to Greenville and drove down Lee Street and stopped near the railroad, which was near the filling station that was afterwards robbed. The appellant then suggested that they stop and make it (meaning stop and hold it up), and he told them that he would drive up and pick them up after they had robbed the filling station; that he handed the witness a pistol which was afterwards used in the robbery. He told them he would pick them up the minute they walked out, which he did. He opened the door for them to get in the car. He further testified that from there they went to Sherman, from there to McKinney, and from there to Dallas, getting to Dallas about a quarter to five, and when they got to Dallas they drove into a garage to have the steering wheel of the car fixed and while the car was being fixed an officer came up and in a few minutes arrested them. He further testified that they were supposed to split the money three ways that they had obtained from the filling station.

The appellant strenuously insists that there is not sufficient corroboration of the testimony of the accomplice Smithhart to support a conviction.

In support of the accomplice's testimony, the state offered the following testimony by Mrs. W. V. Brake, who testified that she lived in Greenville and was at the home of the appellant's mother on the 16th day of November, 1932, somewhere between 1:30 and 2 o'clock. She saw the appellant at his mother's house and at the time he was accompanied by two men. That the appellant and the two men stayed at the house about an hour and a half or two hours and they left in a Ford coupe.

A witness by the name of J. I. Price testified for the state that he lived on Bourland Street in Greenville and worked for Mr. Howell at the sandwich shop located on West Lee Street; that he was working there on the night of the robbery, and on that occasion he saw the two men Smithhart and Sapp in the sandwich shop and he also saw a man on the outside in a model A, Ford coupe; that this was a little after 11 o'clock at night; that he saw the third man in the car, but was not close enough to recognize him, but that he noticed particularly that he had on a white scarf.

The state also proved by a witness by the name of J. F. Parsons that he lived at Blue Bird Lake Station south of Green-

ville on the Campbell highway, which highway also leads to Sulphur Springs. He was at his place of business on the Tuesday night the station was robbed; that he slept at his place of business. On that night a few minutes before 12 o'clock, Smithhart and Sapp came to his station and got from him a bottle of gasoline; that about 5 or 6 minutes thereafter the car drove up to the station and the appellant was driving the car and the other two boys were with him at the time; that they purchased 8 gallons of gasoline from him; that while he did not personally know the appellant he had seen him before and knew his face and had seen him passing his station; that the moon was shining on the night in question.

The state also introduced P. V. Schell who testified that he was a city police officer in the city of Dallas; that he worked in North Dallas, and on Wednesday morning, the 17th day of November, 1932, he saw the appellant at the Parkland garage in Dallas on the inside of the garage and at the time there were two other boys with the appellant. One was Sam Sapp, a boy he had known, and the other was Barney Smithhart. They were all three together; that they were traveling in a Ford coupe about a 1930 model; that it was a quarter to five in the morning; that he found a 38-calibre U. S. pistol in the car in which they were traveling and he arrested them and put them in jail; that he knew they had been in the garage over a hour and a half before he arrested them because he had been there before and had seen them at said garage.

The appellant did not testify and did not offer any evidence.

We think the corroborative testimony was sufficient to support the conviction. The law forbidding a conviction upon the uncorroborated evidence of an accomplice does not demand that there be direct evidence pointing to the accused as the offender, but merely requires that there be other evidence tending to connect the defendant with the offense committed. We quote from the opinion of Presiding Judge Morrow on the motion for rehearing in Minor v. State, 299 S. W., 422, as follows: "Circumstances proved by credible witnesses may be as potent as direct testimony in tending to connect the accused with the commission of the offense. The state is not called upon to point to some single or isolated fact which in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supply the test. If by this rule it appears on appeal that before the jury there was proof confirming the testimony of the accomplice to material facts tending to connect the accused with the commission of the offense,

the law is satisfied. Underhill's Crim. Ev. (3rd Ed.), secs. 129 and 130; Meredith v. State, 85 Texas Crim. Rep., 239, 211 S. W., 227; Wright v. State, 47 Texas Crim. Rep., 433, 84 S. W., 593; Huggins v. State, 85 Texas Crim. Rep., 205, 210 S. W., 804; Halbadier v. State, 85 Texas Crim. Rep., 593, 214 S. W., 349; Middleton v. State, 86 Texas Crim. Rep., 307, 217 S. W., 1046; Walker v. State, 94 Texas Crim. Rep., 653, 252 S. W., 543; Willman v. State, 99 Texas Crim. Rep., 259, 268 S. W., 933, 269 S. W., 801."

The appellant also complains of the refusal of the trial court to charge the jury on circumstantial evidence. There was direct evidence by the accomplice as to the appellant's participancy in the robbery. There was therefore direct evidence of the main fact to be proven, and, where there is direct testimony of the main fact to be proven, the case does not wholly rest upon circumstantial evidence. The fact that the only direct testimony comes from an accomplice witness does not make it necessary to charge on circumstantial evidence. See section 1874, Branch's Ann. P. C.; Johnson v. State, 162 S. W., 512; Perry v. State, 155 S. W., 263; Thompson v. State, 33 Texas Crim. Rep., 222, 26 S. W., 198.

Believing that the evidence is sufficient to support the verdict, and that the court committed no error in failing to charge on circumstantial evidence, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.——Appellant moves for rehearing upon the ground that there is not sufficient evidence to corroborate that of the accomplice. The accomplice unquestionably makes out a complete case, showing that on Tuesday night, November 16th, he, Sapp, and appellant drove up to a filling station in Greenville, having planned their movements, and that he and Sapp went in the filling station, robbed its operator, and at once got in a car driven by appellant, who was waiting in the street, and went to Dallas, where they were all arrested the next morning. We do not think it necessary to set out the testimony in detail, and especially since this is done in the original opinion, but merely the corroborating testimony. The young man who was robbed, said the robbery took place at 12:45

o'clock Tuesday night. He said the accomplice and Sapp robbed him, and that a third man was in a blue or black Ford car out in the middle of the street and that this third man opened the door of the car and the two robbers got in and the three drove off. At about 10 o'clock the next morning he saw appellant and the two men who robbed him in a blue or black Ford car in Dallas. The parties were then under arrest. Mrs. Brake testified that on said Tuesday appellant with the two robbers were at appellant's home in Greenville about 1 or 2 o'clock in the afternoon; that they were driving a black model A Ford coupe; that they remained at appellant's house an hour and a half or two hours. Mr. Parsons, a filling station operator near Greenville, said that at three minutes to 12 o'clock on said Tuesday night appellant and said two robbers got gas at his filling station. He identified all three of them. It was shown further that appellant lived in Greenville, and the other parties did not. The facts just recited identify appellant in company with the two men identified as the robbers at midnight Tuesday near Greenville, where the robbery took place forty-five minutes later. A sandwich man testified that he saw the two robbers in Greenville after 11 o'clock that Tuesday night; that they came inside the shop; he said another man was with them who stayed outside in a model A Ford coupe. The testimony of the officers and the young man who was robbed, showed the same three parties together in Dallas in a model A Ford car, a few hours after the robbery. This testimony seems to point to appellant as a principal offender in said robbery, and is sufficient.

We do not think the facts in the McInnis case, 54 S. W. (2d) 96, anything like as strong as those in the instant case. We have carefully analyzed and read over the entire record, and believe the jury were justified in their conclusion that the corroborative testimony was sufficient to tend to connect appellant with the commission of the offense.

The motion for rehearing will be overruled.

*Overruled.*